Harold **KAUFMAN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 71–1118.

United States Court of Appeals, Eighth Circuit.

Dec. 23, 1971.

William C. Erbecker, Indianapolis, Ind., for appellant.

Daniel Bartlett, Jr., U. S. Atty., St. Louis, Mo., and William C. Martin, Asst. U. S. Atty., for appellee.

Before VAN OOSTERHOUT, HEANEY and ROSS, Circuit Judges.

ROSS, Circuit Judge.

This is an action under 28 U.S.C. § 2255 to vacate Kaufman's sentence and judgment of conviction resulting from a trial in 1964 in United States District Court for the Eastern District of Missouri. In that trial, Kaufman was convicted of armed robbery of a federally insured savings and loan association. His only defense was insanity, and on appeal, this Court affirmed. Kaufman v. United States, 350 F.2d 408 (8th Cir. 1965), cert. denied, 383 U.S. 951, 86 S. Ct. 1211, 16 L.Ed.2d 212 (1966). In June of 1966, Kaufman filed a motion to vacate his sentence under § 2255, and the hearing thereon was held on December 9, 1966. A supplemental motion to vacate sentence was filed by court appointed counsel prior to that hearing alleging as one ground for relief that certain items had been admitted into evidence at the trial after being obtained as the result of an unlawful search and seizure. Other issues were also presented and determined by the United States District Court against Kaufman in its opinion dated March 16, 1967. Kaufman v. United States, 268 F.Supp. 484 (E.D.Mo.1967).

In that opinion, Judge Regan, consistent with prior decisions of this Circuit, ruled that the alleged error relating to unlawful search and seizure could not be raised in a § 2255 proceeding and denied leave to appeal in forma pauperis. This denial was upheld by this Court, and the case was appealed to the Supreme Court. On March 24, 1969, the Supreme Court reversed and remanded, holding that a claim of unconstitutional search and seizure is cognizable in a § 2255 proceeding. Kaufman v. United States, 394 U.

S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) (5–3 decision).

On remand, the United States District Court, 323 F.Supp. 623, considered the search and seizure claims of Kaufman and their effect on his defense of insanity and again overruled the motion to vacate judgment and sentence. Kaufman again has appealed to this Court, alleging (1) certain items were illegally seized as a result of three separate but related searches, and that their reception into evidence was prejudicial to his insanity defense; (2) on remand, the trial court failed to accord him a full evidentiary hearing consistent with the opinion of the Supreme Court; (3) the trial court erroneously denied his counsel leave to file a supplemental motion; and (4) the trial court was biased and prejudiced as evidenced by the unconscionable delay in rendering a decision. For the reasons hereinafter set forth, we affirm the judgment of the trial court.

Kaufman robbed the River Roads Branch of the Roosevelt Federal Savings and Loan Association in Jennings, Missouri at about 4:00 p. m., on December 16, 1963. The proceeds of the robbery were $328.50 in cash, including 50 one-dollar bills whose serial numbers had been recorded, and two packets of American Express travelers checks totaling $11,520.00.

Kaufman fled the scene of the robbery in a 1963 red Rambler car bearing New York license 8Z6367 and, while fleeing, was involved in a hit-run accident. The hit-run accident information was radioed to the police at Alton, Illinois, and shortly thereafter, Officer Stahl of the Alton Police Department observed the car come into Alton over the bridge from Missouri. He signaled for the driver to pull over, but Kaufman attempted a sharp right turn, skidded on the ice and crashed into a tree.

He was placed under arrest by Officer Stahl and was taken to the police station where he was processed for detention. While he was being processed, the police took from his possession $352.00 in cash, including the one-dollar bills whose serial numbers had been recorded by the savings and loan association, and a rental contract for the Rambler car. The Rambler car was towed by Clifford Martin, operator of a private towing service, to Martin's garage. While Martin was inspecting the car, he discovered a revolver, in plain view, on the back seat. He called the Alton Police Department, and Officer Stahl was sent to the garage. Martin removed the gun, and, pursuant to Stahl's directions, placed it in a locked drawer in his office. It was delivered to the FBI later that evening.

FBI agent Peet arrived from St. Louis at about 5:45 p. m. and questioned Kaufman, who readily admitted the robbery and the hit-run accident. Peet then obtained authorization for prosecution from his superior and advised Kaufman he was under arrest on the federal robbery charge. At about 8:00 p. m. Agent Rushing took custody of Kaufman, together with the car rental contract and the $352.00 in cash and returned Kaufman to the FBI office in St. Louis.

After Kaufman was arrested on the federal charge, at about 9:30 p. m., FBI agents searched the red Rambler car, without a search warrant, and found two packets containing the stolen travelers checks, two gasoline sales receipts dated December 15, 1969, from Pennsylvania, a receipt for a Western Union telegraph money order sent by "Paul King" from Harrisburg, Pa. to Kaufman's girlfriend in New York City, and a receipt showing the name of a gun shop at which the pistol used in the robbery had been obtained earlier that day.

At the trial, all of the seized items, except the receipt showing the name of the gun shop, were introduced into evidence. Counsel for Kaufman did not file a pretrial motion to suppress this evidence, but did object to the admission into evidence of each of these items, except the gun and the travelers checks. While the gun shop receipt was not introduced, the operator of the gun shop,

Mr. Davis gave testimony for the Government at the trial bearing on the issue of insanity to the effect that Kaufman had been calm and coherent shortly before the robbery.

## I. SEARCH OF KAUFMAN'S PERSON

■ The first search that took place was a search of Kaufman's person and removal of his personal effects from his clothing. This search was made at the time he was booked in connection with his arrest after his motor vehicle accidents. This issue was raised by a supplemental motion filed by Kaufman's retained attorney after the second evidentiary hearing, but prior to opinion. The trial court refused to allow the late filing of the supplemental motion, but proceeded to the merits (as do we), and determined that since Kaufman was arrested for reckless driving and excessive speed which were observed by the arresting officer, there was probable cause for his arrest; and the "inventory" of the items on his person was not a search intended to obtain the fruits of a crime or evidence relating thereto. We agree that this "search" or "inventory" was proper under those circumstances and that the cash and the rental contract for the car were properly admitted into evidence.

The law in this regard is well expressed in Cotton v. United States, 371 F.2d 385, 392 (9th Cir. 1967) where the court said as follows:

"It was proper for the police to require Cotton to turn over to them, when he was booked, the property, including papers, that he had on his person. This is standard and necessary police practice. Charles v. United States, 9 Cir., 1960, 278 F.2d 386, 389. Compliance with this requirement does not subject the arrested person to an unlawful search where as here, he has been lawfully arrested. It is settled that police may search the person whom they arrest. Preston v. United States, 1964, 376 U.S. 364, 367, 84 S.

Ct. 881, 11 L.Ed.2d 777; United States v. Rabinowitz, 1950, 339 U.S. 56, 60, 70 S.Ct. 430, 94 L.Ed. 653. We cannot see ·that it makes any difference whether this is done on the spot or at the jail where he is booked. See Baskerville v. United States, 10 Cir., 1955, 227 F.2d 454."

*See also* United States v. Gonzalez-Perez, 426 F.2d 1283, 1287 (5th Cir. 1970) wherein the Fifth Circuit stated:

"Here, the arrestees themselves were searched at a time and place different from that of the arrest. A search of an arrestee is still incident to an arrest when it is conducted shortly thereafter at the jail or place of detention rather than at the time and place of arrest. Ray v. United States, 9 Cir. 1969, 412 F.2d 1052; Cotton v. United States, 9 Cir. 1967, 371 F.2d 385, 392; Baskerville v. United States, 10 Cir. 1955, 227 F.2d 454, 456; *see* United States v. Miles, 3 Cir. 1969, 413 F.2d 34, 40–41; Malone v. Crouse, 10 Cir. 1967, 380 F.2d 741; Rodgers v. United States, 8 Cir. 1966, 362 F.2d 358, cert. denied 385 U.S. 993, 87 S.Ct. 608, 17 L.Ed.2d 454. The arresting officers are not required to stand in a public place examining papers or other evidence on the person of the defendant in order for such evidence to be admissible."

## II. THE GUN

■ The gun used by Kaufman in the robbery was admitted into evidence without objection. It had been taken from the back seat of the car by the garage owner who had custody of the car subsequent to the accident. The gun was in plain view of Martin and the trial court correctly held that the discovery of the gun was not the result of a search in the legal sense, and that it was properly admitted into evidence.

In the case of Coolidge v. New Hampshire, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971), the Supreme Court determined that guns given to officers by the wife of defendant

were not the product of an illegal search and stated that the proper test to be applied is whether "in light of all the circumstances of the case," the person who discovered the evidence and turned it over to the police, "must be regarded as having acted as an 'instrument' or agent of the state . . .". In this case, Martin was not looking for evidence and was not acting as an "instrument" or agent of the state but was a private citizen lawfully in possession of the car. When he saw the gun on the back seat, he called the police officer who then instructed Martin to remove the gun.

> "It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. California, 374 U.S. 23, 42–43 [83 S.Ct. 1623, 1634, 1635, 10 L.Ed.2d 726] (1963); United States v. Lee, 274 U.S. 559 [47 S.Ct. 746, 71 L.Ed. 1202] (1927); Hester v. United States, 265 U.S. 57 [44 S.Ct. 445, 68 L.Ed. 898] (1924)." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Coolidge v. New Hampshire, *supra*, 403 U.S. at 464, 473, 91 S.Ct. 2022; United States v. Briddle, 436 F.2d 4, 7 (8th Cir. 1970), cert. denied, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 24 (1971); United States v. Molkenbur, 430 F.2d 563, 566 (8th Cir.), cert. denied, 400 U.S. 952, 91 S.Ct. 244, 27 L. Ed.2d 25 (1970); Searles v. State of Minnesota, 428 F.2d 1188, 1189 (8th Cir. 1970).

### III. THE WARRANTLESS SEARCH OF THE CAR

■ After Kaufman's arrest, his car was thoroughly searched by FBI agents without a warrant. During that search, the agents found the items heretofore described.

We cannot agree with the trial court that this search was not remote in time from the federal arrest, was based on probable cause, and therefore reasonable. Kaufman was arrested by local authority at about 4:40 p. m. His federal arrest was authorized shortly before 7:00 p. m. He was arrested and taken back to St. Louis, arriving there at about 8:35 p. m. The search took place at Martin's garage at about 9:30 p. m.

In Coolidge v. New Hampshire, *supra*, the Supreme Court determined that the search of a car pursuant to an invalid warrant was not proper as "incident" to a valid arrest, since the search was not substantially contemporaneous with the arrest and was not confined to the immediate area of the arrest. Mr. Justice Stewart stated therein that:

> "[e]ven assuming, *arguendo*, that the police might have searched the Pontiac in the driveway when they arrested Coolidge in the house, Preston v. United States, 376 U.S. 364, [84 S. Ct. 881, 11 L.Ed.2d 777] makes plain that they could not legally seize the car, remove it, and search it at their leisure without a warrant. In circumstances virtually identical to those here, Mr. Justice Black's opinion for a unanimous Court held that '[o]nce an accused is under arrest and in custody, then a search [of his car] made at another place, without a warrant, is simply not incident to the arrest.' *Id.*, at 367 [84 S.Ct. at 883]. Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216 [88 S.Ct. 1472, 20 L.Ed. 2d 538]. *Cf.* Chambers v. Maroney, 399 U.S. 42, 47 [90 S.Ct. 1975, 1979, 26 L.Ed.2d 419]." Coolidge v. New Hampshire, *supra*, at 457, 91 S.Ct. at 2033.

Here, the probable cause for the search of the car did not exist at the time Kaufman was arrested but developed after Kaufman was in jail and after the car was in the garage; there was no danger of the car being removed from the scene; and there was ample time for the FBI to obtain a warrant. The search took place two hours after the federal arrest was authorized, at least an hour after the federal arrest was made, and at a place remote from the scene of his arrest. Under these circumstances, and under Coolidge v. New

Hampshire, *supra,* the most recent expression on the subject by the Supreme Court, the warrantless search cannot be held to be reasonable.[1]

## IV. HARMLESS ERROR

Assuming, as we have found, that the search of the car was not reasonable, and, assuming without deciding, that Kaufman had standing to challenge that search, we believe that any constitutional error was harmless beyond a reasonable doubt and could not be the basis for vacating Kaufman's sentence and judgment.

In this case, the sole issue was whether or not Kaufman was legally sane at the time the crime was committed. The only items of evidence obtained in the illegal search were (1) the travelers checks obtained in the robbery; (2) two gasoline sales receipts for gas purchased in Pennsylvania the day prior to the robbery; (3) a receipt for a Western Union money order sent by "Paul King" from Harrisburg, Pa., to Kaufman's girlfriend in New York City; and (4) a receipt showing the name of a gun shop from which Kaufman had purchased the gun used in the robbery. We have carefully examined the record and find no prejudice to Kaufman's insanity defense whatsoever from the Government's possession and admission into evidence of the travelers checks, the gasoline sales receipts or the Western Union money order receipt. It is true that from these receipts, the route Kaufman used to travel from New York to Missouri was established, and the identity of his girlfriend, Pat Scott, was disclosed. But driving a car that far is no proof of sanity, and the testimony of Miss Scott was offered, not by the Government but by Kaufman; and she is the only witness who testified positively that in her opinion Kaufman was not sane at the time of the robbery.

The Government did not offer into evidence the receipt for the sale of the gun. However, testimony was given by John Davis, who sold the gun, as to Kaufman's appearance and actions at the time of the sale. He testified that Kaufman was coherent and did not appear to be nervous or agitated, but he was not asked to express an opinion as to Kaufman's sanity. The record does not disclose whether Davis was located as a result of the receipt, as a result of tracing the number on the gun, or as a result of admissions made by Kaufman to Agent Peet which had been excluded from evidence. However, the place of sale could have been traced from the serial number on the gun, and the gun had been obtained legally from the car after being discovered by the garage owner.

We have carefully examined the evidence given by Davis and find that, at most, it was cumulative evidence of Kaufman's actions and appearance on the day of the robbery. In its case in chief, the Government offered the testimony of Lloyd Woollen, Marcelle Lorenz and John Dedert who testified as to events which occurred during the holdup. Woollen, manager of the River Roads Branch of the Roosevelt Federal Savings and Loan Association, testified that he conversed with Kaufman concerning the possibility of obtaining a G. I. Loan and establishing a savings account. During the conversation, Woollen testified that Kaufman did not appear nervous. While Woollen did not testify as to Kaufman's rationality, the conversation, itself, could provide the basis for an inference that Kaufman was operating rationally. Miss Lorenz, assistant manager of the association, testified

---

1. Our understanding of the holding of Coolidge v. New Hampshire, *supra,* is the same as the understanding expressed by Mr. Justice White in his dissent in that case at page 524, 91 S.Ct. at page 2067, where he stated as follows:

"The majority now approves warrantless searches of vehicles in motion when seized. On the other hand, warrantless, probable-cause searches of parked but movable vehicles in some situations would be valid only upon proof of exigent circumstances justifying the search."

that Kaufman did not appear nervous until Dedert, a customer of the association, and his children entered. Dedert testified that Kaufman only appeared nervous when he stated that he did not want the children to get hurt. Kaufman's concern for the children's safety also provides the basis for a reasonable inference that he was operating rationally.

In rebuttal and after Kaufman presented lay and expert witnesses relating to his sanity, the Government offered the testimony of George Peet, Franklin Walls, John Obertz, and Dr. Davidson, who testified as to events which occurred after the holdup while Kaufman was in custody. Peet, Special Agent with the FBI, testified that he had several conversations with Kaufman, during which Kaufman appeared only slightly nervous. He also related that Kaufman's conversation was logical and coherent and concluded that Kaufman was sane. Walls, also a Special Agent with the FBI, testified that Kaufman responded logically, coherently and in detail to questions asked of him, appeared slightly nervous, but acted in no unusual manner, and appeared sane. Obertz, Chief of Police of the City of Jennings, Missouri, testified that Kaufman's responses to questions were coherent and logical.

The expert testimony concerning sanity was extensive. It was thoroughly analyzed by Mr. Justice (then Circuit Judge) Blackmun in Kaufman v. United States, *supra*, 350 F.2d at 410–413, and no useful purpose would be served in repeating that analysis in this opinion. We are convinced from a careful reading of all of the evidence that any evidence which was received either directly or indirectly as a result of the search of the car did not have any material effect on the minds of the jury in reaching its decision that Kaufman was sane when the robbery was committed. In our opinion, it was at most harmless error beyond a reasonable doubt and not sufficient to warrant vacating the judgment of conviction and sentence.

In Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), the Supreme Court reaffirmed its holding in Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L. Ed.2d 705 (1967), to the effect that "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." This case falls within that rule. *See also* Chambers v. Maroney, 399 U.S. 42, 53, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

■ We have examined Kaufman's other allegations of error and find them to be without merit. The argument that a full evidentiary hearing was not accorded on remand from the Supreme Court cannot be considered in view of counsel's failure to file a transcript of that hearing. The supplemental motion, the filing of which the trial court refused, has been considered and answered both by the trial court and in this opinion. Counsel has not demonstrated how the delay between the last evidentiary hearing and the decision of the trial court could have affected the decision eventually rendered by the trial court.

For the reasons hereinbefore set forth, the judgment of the trial court is affirmed.