**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James Andrew COLBERT and Michael Beryl Reese, Defendants-Appellants.**

**No. 71-2097.**

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1972.

Rehearing En Banc Denied June 1, 1972.

Dyer, Circuit Judge, dissented and filed opinion.

---

Jack Drake, Drake & Knowles, University, Ala., for defendants-appellants.

Wayman G. Sherrer, U. S. Atty., L. Scott Atkins, John S. Salter, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before TUTTLE, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

On the evening of October 24, 1970, officers Donald R. Trimm and B. D. Pitts of the Birmingham, Alabama, police department, en route to the investigation of an incident on Birmingham's north side, noticed the defendants, James Colbert and Michael Reese, standing empty-handed in front of a nightclub. At that time Officer Trimm observed that defendant Colbert fit the general description of a man wanted by the Birmingham police on a charge of assault with intent to murder. Ten minutes later, after completing the investigation of their "primary call," the two officers returned to the nightclub and again observed the defendants, who at this time were each carrying expensive briefcases. While the officers were stopped at a traffic light the defendants began walking toward a parked automobile approximately one-half block away. One of the officers observed an individual inside the automobile gesture to the defendants, and the vehicle sped away as the defendants approached it. The two officers continued to follow the defendants, and they subsequently passed the two men and stopped in front of them. At this point Colbert and Reese turned and began walking away from the police car. As they did, the officers got out of the patrol car, and the defendants placed their briefcases on the sidewalk as the officers approached them. After failing to receive responsive answers to inquiries concerning the defendants' names and occupations, the officers frisked both Colbert and Reese. The defendants then started to walk away from the officers, leaving their briefcases behind. The officers again stopped the defendants and requested from each of them some form of identification. Defendant Reese produced a Georgia driver's license, and defendant Colbert claimed he had no identification. Then Officer Trimm requested that each defendant produce his draft card. When both defendants denied possessing Selective Service cards, they were placed under arrest and charged with violating 50 U. S.C.A. App. § 462. As the defendants were being placed in the patrol car Officer Pitts noticed one of the defendants

withdraw a number of shotgun shells from his pocket and throw them on the ground. As the defendants were sitting in the patrol car the officers returned to the briefcases, which were still resting on the sidewalk where the defendants had left them. A search of the briefcases revealed that each contained a sawed off shotgun with an illegal barrel length. The defendants were eventually charged and indicted for a violation of 26 U.S.C.A. § 5861(d).[1]

Prior to trial the district court held a hearing on the defendants' motion to suppress the shotguns, which were seized as a result of an allegedly unconstitutional search of the defendants' briefcases. The trial judge concluded that the officers' search was constitutionally permissible, and at a subsequent jury trial both defendants were found guilty of possessing an illegal weapon. On appeal, the defendants contend that the trial court erred in holding that the sawed off shotguns should not be suppressed. Finding that the search of the briefcases was unconstitutional, we reverse the defendants' convictions.[2]

■ The authoritative statement concerning the constitutionally permissible scope of a warrantless search incident to a lawful arrest is contained in Chimel v. California, 1969, 395 U.S. 752, 762–763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule.
. . .

There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

■ Applying these principles to the instant case, we first note that the search of the briefcases cannot be justified for the purpose of preventing the concealment or destruction of evidence. We are not aware of any evidence which the defendants, in connection with their failure to possess Selective Service cards, could have concealed or destroyed. Finally, we are unable to conclude that the *Chimel* justification concerning an officer's safety validates the search of the defendants' briefcases, for under the facts of this case the search was obviously conducted outside the area "within [the arrestees'] immediate control."

It is undeniable that the search in this case was effected by the police officers when the defendants were sitting in a patrol car and did not have access to their briefcases. In our opinion it is quite obvious that the briefcases, at the time of the search, were not within the "immediate control" of the defendants. Moreover, it is irrelevant that a valid search of the briefcases could have been conducted at the precise time the offi-

---

1. 26 U.S.C.A. § 5861(d) provides: "It shall be unlawful for any person—to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."

2. On appeal the defendants also assert that the officers' failure to advise the defendants of their constitutional rights before inquiring into their compliance with the Selective Service laws violated the principles enunciated in Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Because we conclude that the search of the defendants' briefcases was constitutionally impermissible, we find it unnecessary to consider the *Miranda* contention.

cers frisked the defendants or arrested them. The *Chimel* justifications serve only to validate searches which are contemporaneous to a lawful arrest, and "these justifications are absent where a search is remote in time or place from the arrest." Preston v. United States, 1964, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777.

Notwithstanding the inapplicability of the *Chimel* justifications, the government presses for judicial approbation of this warrantless search, placing primary reliance upon those Supreme Court cases which have authorized warrantless searches of automobiles. In Carroll v. United States, 1925, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543, the Supreme Court formulated the principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants "where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." This principle was recently followed and reaffirmed by the Supreme Court in Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, and has been extended by two Ninth Circuit decisions in upholding warrantless searches of an arrestee's suitcase which was not within his immediate control. *See* United States v. Maynard, 1971, 439 F.2d 1086; United States v. Mehciz, 1971, 437 F.2d 145. However, subsequent to these Ninth Circuit decisions the Supreme Court undertook a clarification of the *Carroll* principle and its underlying rationale. That clarification, enunciated by the Court in Coolidge v. New Hampshire, 1971, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, and dedicated to the sanctity of the Fourth Amendment, demonstrates conclusively that the automobile has not been made a vehicle for constitutional nullification.

In Coolidge v. New Hampshire the Supreme Court held that a warrantless search of an accused's automobile, which was parked in the driveway of his house, violated the Fourth Amendment's proscription against unreasonable searches and seizures. The Court noted in *Chambers* the warrantless search of an automobile parked on the open highway was constitutionally permissible because the opportunity to search was "fleeting." In concluding that no such fleeting opportunity existed with respect to Coolidge's automobile, the Court remarked:

> The word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears. And surely there is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v. United States*—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where "it is not practicable to secure a warrant," *Carroll, supra*, at 153 [45 S.Ct. at 285], and the "automobile exception," despite its label, is simply irrelevant.

403 U.S. at 461, 91 S.Ct. at 2035.

In the instant case we cannot discern a single circumstance which created only a fleeting opportunity to search the defendants' briefcases. Here, as in *Coolidge*, there are no exigent circumstances to which the government can point to demonstrate that it was not practicable for the police officers to detain the briefcases and procure a search warrant. Therefore, we conclude that the immobile briefcases being beyond the reach of the defendants does not meld into the *Chambers* environment, and that the search of the briefcases violated the defendants' rights under the Fourth Amendment. Accordingly, we conclude that the shotguns, which were procured

as a result of the illegal search, should have been suppressed, and the defendants' convictions are therefore reversed.

Reversed.

DYER, Circuit Judge (dissenting):

I respectfully dissent. When Colbert and Reese observed the police officers, they placed the briefcases they were carrying on the sidewalk and started walking away. At the time of the arrest the briefcases were three to five feet from them. After denying ownership of the briefcases the defendants were placed in the police car. The officers opened the briefcases and found the guns in them.

In my view we should stop trying to second guess law enforcement officers in this kind of a situation. I disagree that since the defendants were sitting in a patrol car "they did not have access to their briefcases." And I strenuously disagree that "at the time of the search [the briefcases] were not within the 'immediate control' of the defendants." As the Supreme Court said in *Chimel*, "A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested." Chimel v. California, 1969, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685. Unlike *Coolidge*, where the defendant was arrested inside his house and his parked car in his driveway was seized, taken to the station and searched the next day, one short lunge by either defendant would have made their briefcases and weapons readily accessible to them.

I entertain no doubt that this was an exigent circumstance, within the purview of *Chimel* and *Coolidge*, justifying the search.

I consider the defendants' *Miranda* argument to be without merit. An exposition of my reasons is not required because the majority pretermitted this question. I would affirm the convictions.