**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Patrick Warren McDOWELL, Defendant-**
**Appellant.**

**No. 72-2514.**

United States Court of Appeals,
Ninth Circuit.

Feb. 9, 1973.

**1038**

Robert Michael Zweig (argued), of Hodge, Green & Zweig, San Francisco, Cal., for defendant-appellant.

William B. Shubb, Asst. U. S. Atty. (argued), Dwayne Keyes, U. S. Atty., Sacramento, Cal., for plaintiff-appellee.

Before HAMLEY and MERRILL, Circuit Judges, and SCHNACKE,* District Judge.

* The Honorable Robert H. Schnacke, United States District Judge for the Northern District of California, sitting by designation.

HAMLEY, Circuit Judge:

Patrick Warren McDowell appeals from his conviction on a charge of possessing an unregistered 9 mm. machine gun, in violation of 26 U.S.C. § 5861(d). On appeal, McDowell argues that the firearm in question, seized incident to defendant's arrest, was obtained unlawfully. The seizure was unlawful, defendant asserts, because there was no probable cause for his warrantless arrest, and the scope of the search which led to the seizure was unreasonable. We affirm.

The facts pertaining to the arrest and search, as set out below, were developed during a pretrial hearing on McDowell's motion to suppress. At about 1:25 a. m., on February 8, 1971, Sgt. Melton E. McDougal of the Placer County, California, Sheriff's Office, received a radio report of an armed robbery at the Sugar Bowl Ski Lodge on Donner Summit, in Placer County. This call came from the Sheriff's dispatcher.

Sgt. McDougal and other law enforcement officers converged on the scene of the robbery. While doing so, Sgt. McDougal received another radio report from Dispatcher Doyle of the California Highway Patrol. According to this report there were two suspects, one wearing a white ski parka and dark clothing and the other wearing a red parka and dark clothing. The suspect with the white parka was reported to be about six feet tall, weighing between one hundred sixty-five and one hundred eighty pounds, and wearing black ski boots laced up and tied with red laces and white stitching along the side. Sgt. McDougal was told, over the radio, that both men were armed, one with an automatic weapon.

When he reached the robbery area, Sgt. McDougal was joined by Deputy John A. Pyle of the Nevada County, California, Sheriff's Department, and a civilian named Sayer. It was then approximately 2:30 a. m. According to another

report Sgt. McDougal then received, two prowlers were observed near the rear of a residence at the Donner Ski Ranch. The weather was clear but it was extremely cold and there were five or six feet of snow on the ground in this area.

Sgt. McDougal and Officer Pyle instituted a search in the vicinity in which the prowlers had been observed. Sgt. McDougal, approaching a tree with a flashlight, saw a man lying on the snow, on his back, with his feet towards the tree and with a back-pack next to him. The man turned out to be defendant Mc-Dowell. Sgt. McDougal called to Mc-Dowell to remain still, and approached to within twenty or twenty-five feet of the man. Sgt. McDougal then ordered Mc-Dowell to stand.

By this time Officer Pyle had joined Sgt. McDougal. Both officers were armed with loaded shotguns and side-arms. Sgt. McDougal observed that Mc-Dowell was about five feet ten or eleven inches tall and weighed between one hundred sixty-five and one hundred eighty pounds. He was attired in a light blue coat and pants. He was wearing black laced-up ski boots with red laces and white stitching up the sides. By this time Sgt. McDougal decided to arrest McDowell.

Before doing so, however, he asked McDowell for his name and received a correct reply. He also asked McDowell how long he had been there and what he was doing. McDowell replied that he had been there three or four hours and was spending the night there. Sgt. Mc-Dougal then asked McDowell to step away from his back-pack and to place his hands in the air. McDowell stepped away about five or six feet and raised his hands. He was then frisked and handcuffed. No weapons were found on McDowell's person. The officers had no arrest or search warrant.

Sgt. McDougal then patted the back-pack and felt a solid object in one of the outside pouches which was closed by a zipper. The officer unzipped the pouch and found the butt-plate for an automatic weapon. The two officers then took McDowell through the snow to a patrol car. Sgt. McDougal testified that he was not afraid that McDowell might obtain possession of the back-pack and get a gun from it while the three were standing near the tree. Nor was the officer worried that the contents of the back-pack might be destroyed. Sgt. Mc-Dougal did testify, however, that he was concerned about his own self-protection, presumably while getting McDowell to the patrol car.

In determining whether the part of a weapon, seized in the manner described above, was admissible in this federal prosecution it is immaterial that the search and seizure were made by state rather than federal officers. *See* Elkins v. United States, 364 U.S. 206, 223, 224, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Whether a warrantless arrest, made by a state or federal officer, is constitutionally valid depends upon whether, at the moment of arrest, the officers had probable cause to make it.

Arresting officers have probable cause if, at the moment of arrest, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the . . . [arrested person] . . . had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). In applying that test, the facts as they appeared to the arresting officer must be judged against an objective standard, the subjective good faith of the officer is not dispositive. *Beck, supra,* at 95, 85 S.Ct. 223; United States v. Tramontana, 460 F.2d 464, 467 (2d Cir. 1972).

Applying the stated standards to the facts of this case, we are convinced that Sgt. McDougal had probable cause to arrest McDowell before he

patted or searched the back-pack. He had information from a reliable source (official radio reports from law enforcement officers), that two armed men had engaged in the robbery, they were attired in ski clothing and boots, and were of described heights and weights.

Within perhaps two hours of the robbery, McDougal discovered a man of about the indicated height and weight lying in the snow in an area not far from the robbery. While his clothing did not correspond, in all particulars, with the description given over the radio, there was a general similarity as to clothing and a close similarity as to footgear. Probable cause can exist even though the broadcast description of the suspect does not exactly match the defendant's appearance. United States v. Moore, 148 U.S.App.D.C. 336, 459 F.2d 1360, 1361 (1972). See also, United States v. Maynard, 439 F.2d 1086 (9th Cir. 1971).

Before making the arrest, McDougal questioned McDowell as to his reason for lying in the snow on that very cold night, and received the incredible answer that he intended to stay there all night. All of this objective information, considered in totality was, in our opinion, trustworthy and sufficient to warrant Sgt. McDougal, as a prudent man, in believing that McDowell had committed the robbery earlier that night. See United States v. Mitchell, 457 F.2d 513, 514 (6th Cir. 1972).

It was therefore permissible for Sgt. McDougal to arrest McDowell and to make a search and seizure incident to that arrest, providing the search was not unreasonable in scope.

As we stated above, Sgt. McDougal made this search and seizure for the specific purpose of safeguarding his personal security. While he testified that he had no fear that McDowell could seize a weapon from the back-pack while they were standing by the tree, he made it clear that he was concerned about his own self-protection. He knew he would have to take McDowell through deep snow, during the night time, to the patrol car and that it would be necessary to take the back-pack along rather than leaving it unattended in the snow. McDougal also had reason to believe that McDowell had an armed confederate in the area who might make an attempt to free McDowell.

Under these circumstances, and despite the fact that McDowell was handcuffed and Officer Pyle was present to assist, we think it not unreasonable for Sgt. McDougal, as a further precaution, to remove any weapon that might have been in the back-pack. It is not an abandonment of the objective-standard test of Beck v. Ohio, 379 U.S. 89, 95, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964), to recognize that an officer or officers who encounter one whom they reasonably believe to be a desperate criminal, in the dead of night, in bleak mountain country deep with snow, knowing that an armed accomplice might be nearby, and knowing that there must be a hazardous trek to the patrol car, might reasonably take precautions which may seem unnecessary when later calmly reviewed in the serene and protected atmosphere of a court room.

The exigency of the moment, as it may reasonably appear to a law enforcement officer at the time, is a factor which must not be overlooked in deciding, long afterwards, whether a search and seizure was reasonable. On the dark and wintry night of February 8, 1971, Sgt. McDougal had no opportunity to pore over law books or consult the county attorney on the niceties of the law of search and seizure. He could not tell McDowell to "resume your position stretched out on the snow while I think for a while about my authority to search your back-pack." It was a time for immediate and decisive action and Sgt. McDougal took it.

Placing ourselves, as best we can, in the circumstances which faced Sgt. McDougal on the night in question, we think his search of the back-pack was prudent

and reasonable, and entirely consistent with McDowell's rights under the Fourth Amendment.[1]

Affirmed.

---

1. Defendant relies on United States v. Colbert, 454 F.2d 801 (5th Cir. 1972). *Colbert* is distinguishable from the present case. The search of the brief cases in *Colbert* was made while the defendants were sitting in a police car. None of the circumstances threatening the officer's safety present in this case were present in *Colbert*.