Wachtler, J. (dissenting).
An attempt to apply the laws of search and seizure to this case illustrates the confusion which exists in that body of our law. Certain of our New York decisions have been invalidated by recent Supreme Court decisions,[1] and we find little consistency in the Federal standards which are, at .best, muddled. We should not seek clear cut rules at the expense of constitutional safeguards (Coolidge v. New Hampshire, 403 U. S. 443, 483), but on the other hand, we should not be compelled to wander endlessly through this labyrinth of judicial uncertainty.
In determining when a search warrant should be required, there are five basic standards which could be applied. The most simplistic would be to go to one extreme and say that a search warrant is never required and that every search should be judged ex post facto to determine if it was reasonable. Such an approach would fly in the face of both the New York and United States Constitutions (see, e.g., Vale v. Louisiana, 399 U. S. 30, 34) and would be inadvisable even if constitutionally permissible. The many valuable functions served by the search warrant requirements have been reiterated in almost every Supreme Court case involving search and seizures and need not be repeated here. (See, e.g., Chapman v. United States, 365 U. S. 610, 613-616; Johnson v. United States, 333 U. S. 10, 13, 14; Wong Sun v. United States, 371 U. S. 471, 481, 482; Katz v. United States, 389 U. S. 347, 356, 357.) In the case at bar, the court below held the search was valid because, inter alia, it was a reasonable search. If we were to follow that reasoning, we would hold that warrants are. only required for unreasonable searches, a clearly untenable position.
At the other extreme would be the demand that a warrant must support every search. This approach would fetter law-enforcement officials in cases where the officer might be exposed to *264 great danger and like the “ no warrant ” approach is too facile-a solution to a complex problem.
■ A third approach would be to declare “ searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment— subject only to a few specifically established and well-delineated exceptions ”. (Katz v. United States, 389 U. S. 347, 357, supra.) The Supreme Court has taken this approach, carving out exceptions for automobiles (Carroll v. United States, 267 U. S. 132), objects in plain view (Ker v. California, 374 U. S. 23), searches incident to a lawful arrest (United States v. Rabinowitz, 339 U. S. 56), administrative searches (See v. City of Seattle, 387 U. S. 541), hot pursuit searches (Warden v. Hayden, 387 U. S. 294), street encounter searches (Terry v. Ohio, 392 U. S. 1) and consentual searches (Zap v. United States, 328 U. S. 624).
Unfortunately, as this case proves, the “ well delineated exception ’ ’ approach soon devolves into rule by rubric. District Attorneys are allowed to plead in the alternative[2] in an ex post facto attempt to find a justification for the search that the court will accept. Although each exception has its own very technical requirements, the courts do not always articulate exactly which exception is being applied often combining elements from several exceptions, as was done in this case, by the majority and the Appellate Division, to reach a desired result.[3] This is not *265 surprising since it is often difficult to ascertain what these technical distinctions are. They are sometimes artificial[4] *** and almost always confusing.
What is more unfortunate about the “ exceptions ” approach is that, as Justice Frankfurter pointed out in his dissent in United States v. Rabinowitz (339 U. S. 56, 80, supra) there is a disturbing tendency to enthrone the exception into the rule. The “ exceptions ” were supposed to be “ tightly guarded ”, but it is impossible to hold the sentinel responsible for the numerous intrusions into the general rule when we are no longer certain of what rule he is guarding. Exception follows exception and soon the general rule itself is engulfed: “ unconstitutional practices get their, first footing * * * by silent approaches and slight deviations from legal modes, of procedure.” (Boyd v. United States, 116 U. S. 616, 635.)
On a practical level the “exceptions” approach is a legal fiction which seldom relates to the real reason for á law enforcement official’s failure to obtain a warrant. As Justice Harlan accurately observed in his concurrence in the Coolidge case (403 U. S. 443, 490, supra): “State and federal law enforcement officers * * * must find intolerable the present state of uncertainty”. We can hardly expect a law-enforcement officer to make a quick decision on whether or not to secure a warrant when his standard for judgment is a complex and highly technical set of legal guidelines such as “plain view”, “automobile ”, etc. The natural tendency will be to adopt the caption and disregard the technical requirements underlying it. And even that assertion is based on the assumption that a law- *266 enforcement officer has the requisite knowledge of all of the ‘ ‘ tightly guarded ’ ’ exceptions to the warrant requirement.
The fourth possible standard, and one which could probably support the majority in this case, is a type of 11 shocks the conscience ” approach to the warrant requirement. (See Rochin v. California, 342 U. S. 165, 172.) That is, the court will not overturn a warrantless search unless the police acted unreasonably in not securing a warrant[5]. This, of course, provides no standard at all. It leaves us with no guidelines for courts and no guidelines for the officer on the street.
The 11 shocks the conscience ’ ’ approach has the very dangerous tendency of considering the place searched in grading the reasonableness of the warrantless search which is to disregard the Supreme Court’s admonition that the Fourth Amendment protects people not places. (Katz v. United States, 389 U. S. 347, 351, supra.) The fact that a car is somehow deserving of a lesser constitutional protection than a house was finally put to rest in Coolidge (403 U. S. 443, 461, n. 18, 479, supra; see, also, United States v. Payne, 429 F. 2d 169, 171, 172). A person should have as great an expectation of privacy for something in the glove compartment of his car as in a dresser drawer in his home. Even if we were to accept varying levels of privacy in differing places as a sound constitutional theory, it would thrust the courts and the police into an inescapable quagmire. If a house is sacred and a ear not so sacred, what about a mobile home? Or how does one compare the sanctity of a briefcase with that of a purse or a car for that matter? Opening a briefcase without a warrant may shock one Judge but he perfectly reasonable to another—a female jurist may find opening a purse quite shocking while her male colleagues may find it quite reasonable. And a policeman will have no idea as to what shocks the court until after he has conducted his search.
I believe the only workable and constitutional standard to apply in search and seizure cases is one which states that absent *267 exigent or unusual[6] circumstances, a law-enforcement official must first obtain a warrant to conduct a search. This approach discards the rubrics of the exceptions and looks instead to the reasons underlying those rubrics. A careful study of the “ exception ” cases will reveal that the rationale underlying the case where the exception was established was not that there was a good reason to search, but that there was a good reason why a search warrant could not be obtained. The exigent circumstances articulated in most of the cases that were the sine qua nons of warrantless searches and seizures, was that there existed a danger to the officer or a danger of the evidence being destroyed and/or spirited away. (See, e.g., Dyke v. Taylor Implement Co., 391 U. S. 216, 219; Preston v. United States, 376 U. S. 364 367, supra; United States v. Colbert, 454 F. 2d 801.) Technical distinctions as to place (see United States v. McIntyre, 304 F. Supp. 1244, 1246) and time (see Kaufman v. United States, 453 F. 2d 798, 802) should not be determinative factors if there was in fact no danger to the officer or the evidence involved.
The search and seizure law became uncontrollable when the rubric was adopted and the rationale discarded. So, in Carroll v. United States (267 U. S. 132, 153, supra) the Supreme Court allowed a warrantless search of an automobile stopped on a public highway because it was “ not practicable to secure a warrant ” (i.e., there were exigent circumstances—the car could have been moved away while the police were gone). Unfortunately, the Carroll case soon turned into the “ automobile exception”, and in Chambers v. Maroney (399 U. S. 42, supra) the Supreme Court went so far as to allow the warrantless search of an automobile that was safely parked in a police station, away from any danger of destruction, and without the possibility of severely impeding traffic or necessitating a substantial police *268 guard. Coolidge (403 U. S. 443, 461, 462, supra) has helped restore reason rather than rubric by declaring that “ The word ‘ automobile ’ is not a talisman in whose presence the Fourth Amendment fades away and disappears ”. Coolidge made it clear that an automobile can only be searched when it is not practicable to get a warrant. (Chimel v. California, 395 U. S. 752, 764, n. 9.)
It is also important that the scope of the warrantless search and seizure be only as broad as the justification supporting it. (Terry, v. Ohio, 392 U. S. 1, supra; Chimel v. California, 395 U. S. 752.) So, exigent circumstances may make it necessary to seize a car that contains or is itself evidence of a crime, but once the car is secure in such a manner that the justification which gave rise to the warrantless, seizure no longer exists, a warrant should be secured before proceeding with the search. As Justice Hablan pointed out in his dissent in Chambers (399 U. S. 42, 63, supra) it is a far greater intrusion on privacy to search a car than to seize a car. It must be remembered, after all, that the Fourth Amendment protects privacy not property. (Warden v. Hayden, 387 U. S. 294, 303-306, supra; see, also, Mozzetti v. Superior Ct., 4 Cal. 3d 699 [search of a small suitcase seized pursuant to a voucher search disallowed].)[7]
• The Supreme Court may already have moved back to the standard that absent exigent circumstances, a warrant is always needed for a search (Agnello v. United States, 269 U. S. 20, 33; see, also, McDonald v. United States, 335 U. S. 451, 456; United States v. Jeffers, 342 U. S. 48, 51). In the Coolidge case (403 *269 U. S. 443, 468, supra) the Supreme Court stated that “ no amount of probable cause can justify a warrantless search absent ‘ exigent circumstances ’ ”. We agree with the observation made by Justice Black in his dissent that the over-all effect of Goolidge is to hold that “ if the police could have obtained a warrant and did not, the seizure, no matter how reasonable is void.” (Id., at p. 509; see United States v. Resnick, 455 F. 2d 1127, 1131, 1132; United States v. Nelson, 459 F. 2d 884, 888.)
This is not to say that laying down an exigent circumstances rule will make cases easy to decide. It will still be difficult to discern when exigent circumstances existed; but it is only the application of the standard that will be difficult. We are now in a situation where the standards themselves are incomprehensible so that an inherently difficult situation is made impossible. There is no policeman or court that can really put substance into technical legal jargon like “ plain view ” or “ search incident to a lawfull arrest ” or into a totally vague “ shocks the conscience ” test. A standard which says that you must always secure a warrant unless you can articulate a reason which made it impracticable to secure a warrant is easily understood.
It may well be that in almost every case of “ hot pursuit ” or “ searches incident to lawful arrest ” there will be exigent circumstances which make it impracticable to obtain a warrant, but even in these- cases the justification can be articulated in terms of a common-sense reason as to why a warrant was not obtained and not in terms of some judicially-constructed catch phrase.
Turning now to the case at bar, and applying the standard I favor, the only question which need be asked is, “ Was there any reason discernable from the record which would have made it impracticable[8] for the policeman to get a warrant? ” Since that question must be answered in the negative, I find this warrantless search of the vehicle to be unconstitutional.[9]
*270 I find nothing in the record that would have justified the police officer’s failure to secure a warrant. Even assuming arguendo that the police did not have the time to secure a warrant before approaching the truck with the defendant, they clearly had time to do so afterwards.[10]
*271 The defendant was put under arrest by the detective as soon as he viewed the glasses, bag, and blood through the window of truck.[11] The detective testified that, after placing the defendant under arrest: “ I didn’t leave until someone came to safeguard the truck ’ ’. The record is unclear as to exactly how long the detective was gone before returning to the guarded truck; the officer guarding the truck said one to one and one-half hours, but the record indicates it may have been considerably longer. In any event, the technicality as to length of time becomes unimportant in an analysis that merely attempts to determine if there was some overriding reason why a warrant could.not be obtained.
The truck was secure in a place where it could be easily guarded and where it caused no general disruption of traffic or undue strain on police manpower. The defendant—the sole suspect in the case—was under arrest and safely away from the truck. There was certainly ample time to search and not merely a fleeting opportunity. (See Coolidge, 403 U. S. 443, 460, supra; United States v. Day, 455 F. 2d 454, 456; United States v. McIntyre, 304 F. Supp. 1244, 1245, 1246, n. 4, supra.) Interestingly enough the detective did obtain a search warrant for the house even though it was not under guard (see Vale v. Louisiana, 399 U. S. 30, 34, supra) and the defendant’s brother-in-law was in the house during the time the police were obtaining the warrant. There can be no valid distinction for obtaining a warrant for the house and not for the car unless we wish to engage in the practice of grading places for degrees of privacy (supra). The officer should have obtained a search warrant before searching the car. Therefore, we believe that even if the articles viewed through the window by the policeman are allowed into evidence,[12] the evidence found in the car as a result *272 of the illegal search (i.e., the manifold, the sweater, the soda bottle, and the photographs of the interior of the car, none of which items were in plain view prior to the opening of the car) should be suppressed.
The District Attorney claims that even if the search and seizure was illegal, it was harmless error (CPL 470.05). No one reading the record of this case could legitimately assert that without the tainted evidence there is no reasonable possibility that defendant would not have been convicted. (People v. Baker, 26 N Y 2d 169, 174.)
There was no eyewitness testimony in this case. The victim was totally inebriated and could not remember anything that happened after crossing the 59th Street bridge in defendant’s truck. There was conflicting police testimony as to when various events occurred. The State’s key witness, a night employee of the garage, testified that he drove defendant’s truck to its final parking place where it was later found by the police. It is difficult to understand why the defendant would willingly turn the vehicle over to an unknown third party when, according to police testimony, there were “ massive amount[s] of blood in the truck ”. The night attendant did see a pocketbook belonging to the victim wedged between the seats, and gave it to the defendant. Yet, despite the existence of an overhead light, the attendant did not see the “ massive amounts of blood ” or the other objects later viewed by the detective. Nor did the defendant at any time go back to the truck to check for evidence he might have left in the truck even though he had been put on notice of the possibility that such evidence was left there by the return of the pocketbook. There was also evidence which *273 tended to cast some suspicion on another person who had access to the truck as well as evidence which could have cast a reasonable doubt in a jury’s mind as to defendant’s guilt. This is all evidence which the jury presumably had before it but found that it was outweighed by contrary evidence. We cannot say, beyond a reasonable doubt, that the jury would have decided the same way had the evidence which should have been suppressed been excluded from the trial.
The District "Attorney claimed that it was proper police procedure, after the truck was under guard, for the detective to get lab men to conduct the search of the car. I have no reason to doubt that assertion and intuitively agree with it. However, if there is no threat of the evidence being destroyed or of the officer being in danger and there are no other exigent or unusual circumstances, it is also proper police procedure to secure a search warrant before conducting a search and seizing evidence. The evidence unlawfully obtained should have been suppressed.
In addition I would reverse because of the prejudicial remarks made by the prosecutor during the course of his summation before the jury. I am in basic agreement with the dissenting Justices in the Appellate Division when they said:
‘ ‘ A prosecutor is not expected to relinquish the art of oratory or the powers of eloquence in his summation to the jury. But when his zeal to secure a conviction carries him beyond the bounds of fair play or into the heat of inflammatory language, due process is violated and a conviction so tainted cannot stand. The issue is not whether the guilt of the defendant was demonstrated in spite of the misconduct at the end of the trial, but whether the blatant violation of due process can be tolerated. [Citation omitted.]
“ Here the prosecutor in his summation emphasized, with profanity, that the defendant was a liar, called him an [1] animal ’ and a ‘ beast ’, accused him of having ‘ sexual and animalistic ’ desires, though the defendant was not on trial for a sexual crime, and urged the jury to get ‘ an animal off the streets. ’ Such tactics, pursued by the prosecutor despite the admonitions of the trial court, deprived defendant of his right to a fair trial [citation omitted].”
This court condemned both outrageous language and pleas to safeguarding the community in People v. Lombardi (20 N Y 2d *274 266, 272). The prosecutor in the case at bar obliquely threatened the jury with popular disapproval should they return a verdict for the defendant. This was clearly improper.
I feel the prosecutor’s misconduct, as was conceded by the respondent, amounted to “ verbal crudities and rantings ” which both inflamed the jury and degraded the “People”. Accordingly, the judgment .should be reversed and a new trial ordered.

. In this case, the District Attorney gave the court a panoply of possible exceptions to choose from including the “ automobile ”, “ search incident ”, “ plain view ”, and “ probable cause ” exceptions. Many of the theories overlap and others are clearly in conflict with one another. For instance, the “ probable cause” to search an automobile exception has to be intentional and knowing (People v. Brown, 28 N Y 2d 282, 285, supra) while a “plain view” seizure must have been effected after the evidence was come upon inadvertently (Coolidge, 403 U. S. 443, 466, supra).

. The majority summed up its argument by stating (p. 260): “Moreover, the seizure as incident to the arrest, or independently, was justified because the police had observed in plain view, on consent of the defendant, incriminating evidence of the use of the truck as the scene of the crime and the paraphernalia relating the victim to the bloody scene.” This shotgun analysis of the case at bar in no way spells out a “ tightly guarded ” exception which would take the warrantless search out of the per se prohibition against warrantless searches and seizures (Katz v. United States 389 U. S. 347, 357, supra). It merely con *265 firms my fear that the “ narrow ” “ tightly guarded ” exceptions spelled out by the Supreme Court will be all but obliterated by the shotgun approach of well-intentioned prosecutors and courts attempting to justify an illegal search that has uncovered incriminating evidence.

. After Preston v. United States (376 U. S. 364), it seemed clear that the automobile exception required exigent circumstances. But then in Chambers v. Maroney (399 U. S. 42, 47), Preston was distinguished on the grounds that in Preston there was no probable cause to search the automobile even though Preston clearly did -not turn on that point. The court came full circle when Coolidge (403 U. S. 443, 463, supra) distinguished Chambers on the grounds that Chambers never held probable cause was enough to search an auto but was merely a logical extension of Carroll (supra) even though Chambers did appear to establish a probable cause standard for warrantless searches of automobiles.

. I am also afraid that underlying a “ shocks the conscience ” approach will be an ineffable feeling that if the police did in fact find incriminating evidence, the search is presumptively not shocking. Although no court has suggested adopting such a result oriented theory, I am afraid that it is de facto a significant controlling element behind any search and seizure doctrine that is based on either, a very intricate or completely vague rationales.

. An example of an unusual circumstance would be a voucher search. (See People v. Sullivan, 29 N Y 2d 69.) It is an unusual circumstance in the sense that the “search” is not for the purpose of uncovering evidence against the accused (id., at p. 75) and is justified by an overriding governmental purpose unrelated to the crime under investigation. However, even these searches should be viewed with great circumspection; a court is not and should not be bound by the mandates of a police administrative regulation. (See People v. Sullivan, 29 N Y 2d 69, 77, supra [Fuld, Ch. J., dissenting].)

. The case of Price v. United States (348 F. 2d 68) relied upon heavily by the majority is probably inapplicable in view of subsequent Supreme Court decisions in the field. But to the extent that Price maintains its vitality, it supports the view that a search must be limited to the exigencies of the “ exception” supporting it. Unlike the ease at bar, the articles seen in plain view by the police officers in Price were “ under defendant’s immediate control ” (id., at p. 70)'. More importantly, though, the majority fails to point out that there was also evidence found in the ear that was not in plain view (like the manifold, bottle, and sweater, in the case at bar). The items found by a search of the trunk of the car after it was secured were not allowed into evidence. Certain additional evidence in Price was considered properly seized as incident to the second and subsequent arrest of defendant’s friend (not on the grounds that' the seizure of the .car after the arrest of the defendant gave the police a Carte blanche to conduct a warrantless search of the entire car).

. Mere inconvenience is not enough to make it impracticable. (Coolidge, 403 U. S. 443, 470, 481, supra.)

. I believe this search and seizure is unconstitutional even under the “ exceptions ” approach. I do not wish to undertake as lengthy and complex an analysis as was undergone in Goolidge, though such an analysis is the inevitable result of an “ exceptions ” approach. It should be noted however, that the similarities between Goolidge and this case are striking: (1) In both cases the *270 automobile itself was evidence of the crime. (403 U. S. 443, 502, supra.) (2) In both cases the police had prior eyewitness testimony tending to link the vehicle with the crime. In Coolidge there was eyewitness testimony placing the car near the scene of the crime (p. 464, n. 22). In the case at bar, two bartenders and possibly even the garage attendant where the truck was kept (the record is unclear if he saw the police before or after they “ took charge ” of the truck) had given the police a description of the vehicle and even identified defendant as having had the victim in his truck. In fact the record indicates that there were no other suspects. (3) In neither ease were the police absolutely certain where the ear would be (p. 522) though there is some confusion in the record in the ease at bar that might lead one to believe the police actually viewed the vehicle before asking the defendant to lead them to it. (4) In neither ease was the finding of the vehicle inadvertant (pp. 469-471). In the ease at bar the police had the defendant lead them to the truck by a means which could in no way be considered as voluntary since it was done under a false presumption as well as under “‘the shadow of the badge and threat of force’” (Harless v. Turner, 456 F. 2d 1337, 1339, supra; see, also, Bumper v. North Carolina, 391 U. S. 543, 548; United States v. Smith, 308 F. 2d 657; Pekar v. United States, 315 F. 2d 319, 324; People v. Whitehurst, 25 N Y 2d 389). In any event, the police were coneededly looking for that which they found contrary to the “plain-view” requirement spelled out in Coolidge (p. 469) and contrary to the circumstances in the seminal New York “plain view” case of People v. Swanberg (22 A D 2d 902, mod. and affd. 16 N Y 2d 649) and the seminal Federal case of Ker v. California (374 U. S. 23, 43, supra). (5) In neither case did the police conduct an immediate search of the vehicle. And despite the contention of the court below, a later search is not justified even if we were 'to assume, arguendo, that an immediate one would have been justified. (People v. Lewis, 26 N Y 2d 547, 552 [n.]; Preston v. United States, 376 U. S. 364, 368, supra; Coolidge, 403 U. S. 443, 447, 457) supra.) (6) In both cases a guard was placed on the car (pp. 456, 461, n. 18) making it virtually safe from the danger of being spirited away. The minor factual distinctions between this case and Coolidge would not render a different result (see, e.g., Coolidge, 403 U. S. 443, 522, supra [White, J., dissenting] the majority reasoning would make no distinction between a ear parked on private property and one in a parking lot).

. The Coolidge court implied that the posting of- the police guard on the car was not a seizure in a Fourth Amendment sense since the court talked in terms of the search and seizure being unconstitutional. (403 U. S. 443, 478, supra; see, also, Preston v. United States, 376 U. S. 364, supra.) Justice Black in his dissent in Coolidge described the police action as “ taking charge ” of the vehicle. (Id., at p. 495.) However, even were we to assume arguendo, that the *271 posting of tiie police guard on the car in this ease was a constitutionally cognizable seizure justified by exigent circumstances, the subsequent warrantless search of the car would still be unconstitutional as being unnecessarily broad in scope.

. The other evidence which was subsequently seized without a warrant could not be seen through the car window at the time of the arrest.

. If the shoes, glasses and visible bloodstains were found on the floor of the garage rather than in the car, the policeman could have seized them without a warrant not because “ plain view ” is an exception to the warrant requirement but because it is not a constitutionally cognizable search and seizure at all. If a person leaves something in a public place where it can be easily viewed, he *272 has no legitimate expectation ■ of privacy as to those items left in plain view. However, if we were to allow the police to enter the ear to seize that which was in plain view, and then justify the police seizure of other items which suddenly came into plain view (once the police were “ legitimately ” inside the car) we would be justifying a full-blown search based on an initial theory that no constitutionally cognizable search had been conducted. The fact that the car was evidence of the crime and in plain view makes no difference. The police officer still could not search what was inside the car, and not open to public view since there was still a legitimate expectation of privacy as to the hidden portions of the car. A reasonable man would not expect something lying on his front seat to be considered as shielded from public view, but he would expect something hidden under the seat to be kept private.