UNITED STATES of America,
Plaintiff-Appellee,

v.

Jesse Vance MEHCIZ, Defendant-
Appellant.

No. 25868.

United States Court of Appeals,
Ninth Circuit.

Jan. 11, 1971.

Rehearing Denied Feb. 8, 1971.

Philip Daigneault (argued), of Daigneault, Abel & Daigneault, Torrance, Cal., for defendant-appellant.

Morton Sitver (argued), Asst. U. S. Atty., Richard K. Burke, U. S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before ELY and WRIGHT, Circuit Judges, and SMITH, District Judge.[*]

EUGENE A. WRIGHT, Circuit Judge:

Mehciz was convicted after a jury trial for possession of 12,000 tablets of LSD for sale in violation of 21 U.S.C. §§ 331(q) (3) (A), 333(b) (1), and 360a (c) (1). We affirm.

## I. THE FACTUAL BACKGROUND.

On September 29, 1969, Arthur Fluhr, Special Agent of the Bureau of Narcotics and Dangerous Drugs, received information from a reliable informant that a large shipment of LSD was being carried from southern California to Phoenix the next day. Fluhr's informant supplied the first name (Vance) of the person who would be carrying the drugs as well as the airline, flight number and arrival time, and described him as a white male about six feet tall, wearing long dark hair and missing a front tooth.

Fluhr and other federal officers met the flight on its arrival. They stood near the gate and watched the deplaning passengers until they spotted the appellant Mehciz who fit the description they had been given. The officers allowed Mehciz to pass through the gate and past them when Fluhr called, "Hey, Vance!" at which Mehciz turned around and looked at Fluhr.

Mehciz was immediately placed under arrest. When arrested, he was carrying a small gray overnight suitcase. The officers took the suitcase and handcuffed Mehciz so that there was no danger that he would get to the suitcase, obtain a weapon or destroy any evidence that might be found inside.

Fluhr opened the suitcase at the airport and found the LSD tablets inside.

## II. SEARCH AND SEIZURE.

The federal officers who arrested Mehciz had neither an arrest warrant nor a search warrant. Despite the lack of a warrant for appellant's arrest, he does not now contest the validity of that arrest.

At the trial Agent Fluhr testified at some length as to his previous dealings with the informant and amply established his reliability.[1] Under these circumstances, there is no doubt that the warrantless arrest was based on probable cause,[2] and appellant makes no argument to the contrary.

Conceding the lawful nature of his arrest, appellant's contention is that the search went beyond the permissible scope of a search incident to a lawful arrest. Primary reliance is placed upon Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

In *Chimel*, as here, the arrest was concededly lawful[3] and the Court indicated that there was clearly a right to conduct some kind of search incident to the arrest. The question, however, was whether the search of an entire three-bedroom house when Chimel was detained in one room was beyond the per-

---

[*] Hon. Russell E. Smith, United States District Judge for the District of Montana, sitting by designation.

1. Agent Fluhr's testimony as to reliability specifically referred to prior dealings with this informant which had resulted in seizures of substantial quantities of narcotics. Thus, this is not a case like Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L. Ed.2d 723 (1964) or Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.

Ed.2d 637 (1969) where there was only a bare statement as to the informant's reliability.

2. *See, e. g.,* Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

3. The arrest in *Chimel* was made pursuant to a warrant but that fact is of no moment here in light of appellant's concession of the legality of his warrantless arrest.

missible scope of searches without warrant but incident to lawful arrest.

The Court in *Chimel* concluded that the search there was beyond permissible scope. In defining permissible scope, the Court said "(t)here is ample justification for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." [4]

Appellant's argument here is that the suitcase was searched after it had been taken from his possession and after he had been handcuffed by the federal agents. Therefore, the suitcase was not "within his immediate control" as that phrase is defined in *Chimel*. Rather than conduct the search at this time, appellant argues that the federal agents should have maintained their control over the suitcase and then secured a warrant authorizing them to open and search it. Appellant does *not* suggest that the officers could not have procured a warrant under these facts nor would such an argument have merit.

We are not unimpressed by the logical conclusion which appellant draws from his interpretation of the *Chimel* rule, but we are convinced that a contrary result is required. In Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court was faced with a warrantless search of the automobile which the defendants had been driving when lawfully arrested. The suggestion made here was also proposed to the Court there, that the automobile should have been impounded without a search until a search warrant could be obtained.

The Court in *Chambers* expressly rejected the suggestion saying that "(f)or constitutional purposes, we see no dif-

ference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment." [5] We believe that the factors underlying the decision in *Chambers, i. e.,* mobility and the lack of undue intrusion, apply with at least equal force to the suitcase involved here.

There is little doubt but that the rule of *Chimel* is apparently not applicable to automobile searches per the decision in *Chambers*. The Supreme Court has expressly held that "for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars." [6] While we are not necessarily of the view that *Chimel* is limited to house searches, we think it only reasonable to conclude that there is a corresponding "constitutional difference" between a house and a suitcase.

Finally, we think our conclusion here is further fortified by Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). In *Draper*, the federal narcotics agents learned from a reliable informant that a man would be arriving in Denver by train from Chicago and would be delivering a shipment of heroin. He was described in detail but not named. When Draper left the train, the agents saw that he conformed to the description they had been given. He was stopped, arrested and searched. The heroin was found in his hand and a needle (also introduced into evidence at his trial) was found during the course of an on-the-spot search of a small handbag which he was carrying and which was taken from him when he was arrested.

The Court noted that the agents had verified everything told them by the in-

---

4. Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969).

5. Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

6. *Id.* at 52, 90 S.Ct. at 1982, *citing* Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

formant "except whether [Draper] had accomplished his mission and had the three ounces of heroin on his person or *in his bag.*"[7] As here, "the arrest was therefore lawful, and the subsequent search and seizure, having been made incident to that lawful arrest, were likewise valid."[8]

We think that *Draper* is factually indistinguishable from the situation involved here. Our result is thus dictated by *Draper*, as well as by the logic of *Chambers*, and we find nothing in *Chimel* or any other post-*Draper* decisions of the Supreme Court that leave any doubt as to the continuing vitality of *Draper* as constitutional precedent.[9] Indeed, this circuit has recently noted that "*Draper* is still good law for pre-arrest facts which parallel that case."[10]

### III. THE IDENTITY OF THE INFORMANT.

Appellant made two requests for the identity of the informant here, first at arraignment and the second during trial. He now complains generally of the trial court's refusal to disclose the name of the informant until after Mehciz himself had taken the stand during the trial.

When the request was made at arraignment, counsel for Mehciz indicated that he wanted the identification because it was the information supplied by the informant which formed the sole basis for probable cause. Agent Fluhr testified extensively at the hearing as to his former relations with the informant and so conclusively established his reliability that appellant does not now challenge the trial court's ruling that the established reliability of the informant adequately supported the arrest of Mehciz on probable cause.

Assigning error to the trial court's refusal to supply the name of the informant at this stage of the prosecution, appellant relies on Costello v. United States, 298 F.2d 99 (9th Cir. 1962) for the broad proposition that "if the prosecution relies solely upon the tip of an informant as the sole justification for arrest, it must disclose the informant's identity."

Our reading of *Costello* fails to justify this broad rule. The crucial distinction between this case and *Costello* is that the record in *Costello* failed to reveal *any* showing that the informant was reliable. Indeed, in *Costello* the court specifically noted that there was no showing that the informant was other than "an anonymous uncorroborated caller."[11] Here we have an informant of unquestioned reliability and we agree with the statement in *Costello* that the "reliability of the informant is the controlling factor."[12]

More pertinent to the resolution of this question is McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). Under somewhat similar factual circumstances the Court specifically ruled that a state trial court need not require police officers to reveal the name of a reliable informant where "the issue is the preliminary one of probable cause, and guilt or innocence is not at stake."[13] The reasons for refusing to disclose the identity of an informant are

---

7. Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333 (1959) (emphasis added).

8. *Id.* at 314, 79 S.Ct. at 333.

9. The Supreme Court was, of course, aware of *Draper* when it decided *Chimel* since *Draper* is cited in the *Chimel* opinion. Chimel v. California, 395 U.S. 752, 760 n. 4, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). We find nothing there, or elsewhere in *Chimel*, to indicate that *Draper* was affected in any way.

10. United States v. Jiminez-Badilla, 434 F. 2d 170 (9th Cir., November 9, 1970) *citing* United States v. Mitchell, 425 F.2d 1353 (8th Cir., 1970) (Blackmun, J.).

11. Costello v. United States, 298 F.2d 99, 101 (9th Cir. 1962).

12. *Id.*

13. McCray v. Illinois, 386 U.S. 300, 311, 87 S.Ct. 1056, 1062, 18 L.Ed.2d 62 (1967).

well known,[14] as is the existence of the tremendous traffic in narcotics and dangerous drugs which require federal and state officers to rely heavily on informants.

 We would therefore reiterate what was said in *McCray, Draper* and *Costello*: the reliability of an informant is the controlling factor in establishing probable cause for arrest under these circumstances and a trial court need not require federal agents to disclose the identity of a reliable informant where the sole ground for seeking that information is to establish the existence of probable cause for arrest.[15]

Appellant's counsel renewed his request for the identity of the informant on the first day of trial. At this time he indicated for the first time that he intended to interpose the defense of entrapment and that he needed the name of the informant to establish it. The trial court noted that the defendant was well aware of the circumstances surrounding his transportation of the LSD to Phoenix and could well have raised this defense before and sought the name of the informant. The motion was again denied "until such time as there develops any evidence of entrapment here."

Mehciz then took the stand and admitted that he had transported the LSD from Los Angeles to Phoenix. His testimony was that one Brazil had hired him, at Brazil's initiative, to transport the LSD. The trial court then agreed that entrapment had been established as a viable defense and ordered Agent Fluhr to take the stand and state the name of the informant. Fluhr was recalled to the stand and identified Brazil as his informant.

After having finally secured the name of the informant which it had so long sought, the defense rested at this point without calling Brazil to the stand. The government, however, then called Brazil in rebuttal. Brazil emphatically denied that he had hired Mehciz to transport the LSD and the defense efforts to shake him from that testimony were futile.

The jury apparently did not believe appellant's version because they found him guilty following an instruction regarding entrapment which appellant now concedes to have been eminently correct.

Appellant now argues that the trial court's refusal to require identification of the informant until after he had taken the stand had the effect of forcing him to take the stand in violation of his rights under the Fifth Amendment. The difficulty with this argument is that appellant misunderstands the basic nature of the entrapment defense.

 It is elemental that "absent the commission of a crime, there can be no entrapment."[16] It has long been the rule in this circuit[17] as well as at least two other circuits[18] that a defendant who wishes to avail himself of the entrapment defense must admit the substantive elements of the crime.

 Appellant had to testify not because he was unable to secure the name of the informant but rather because he wished to offer entrapment as a defense. Until such time as there was an admission by the defendant that he had committed the crime, the trial court was quite correct in refusing to require the government to identify a reliable and valued informant on the mere allegation of counsel that he thought he could establish entrapment as a defense.

---

14. *See* 8 Wigmore, Evidence § 2374 (McNaughton rev. 1961).

15. *See also* Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

16. Ramirez v. United States, 294 F.2d 277, 283 (9th Cir. 1961).

17. Ortiz v. United States, 358 F.2d 107 (9th Cir. 1966) ; Ortega v. United States, 348 F.2d 874 (9th Cir. 1965).

18. *See, e. g.,* Burris v. United States, 430 F.2d 399 (7th Cir. 1970) ; United States v. Pickle, 424 F.2d 528 (5th Cir. 1970).

## IV. MOTION FOR CHANGE OF VENUE.

■ Appellant sought a change of venue under Rule 21(a) of the Fed.R. Crim.Proc. on the ground that publicity surrounding his arrest in Phoenix had been so extensive as to establish "so great a prejudice against defendant that he cannot obtain a fair and impartial trial." This motion was properly denied by the district court.

Meador v. United States, 341 F.2d 381 (9th Cir. 1965), the leading authority in this circuit, completely forecloses appellant's argument here. While there are other factors which make Mehciz' case even weaker than *Meador* it is sufficient to note that in *Meador* four of 32 prospective jurors indicated that they had heard or read of the case whereas *none* of the jurors here said that they had heard, seen or read anything of this case.

## V. THE TRIAL PROCEEDINGS.

■ Appellant's final complaint grows out of some confusion during his trial which resulted in the judge and jury returning to the courtroom while Mehciz and his counsel were absent due to a misunderstanding of the time to reconvene. Without detailed consideration of this argument, it suffices to note that the trial judge said nothing which we believe to have been even arguably prejudicial and in fact cautioned the jury that "the mere fact counsel for defendant and the defendant are not present at this time should in no way prejudice them whatsoever in your minds or in this case."

It appears to us that the trial judge should be commended for the manner in which he conducted the trial and his courteous attitude toward out-of-state counsel.

Affirmed.

ELY, Circuit Judge (dissenting):

I respectfully dissent. As I see it, the majority, falling back upon an eleven-year-old decision of the Supreme Court, essentially disregards the more recent teaching of Chimel v. California, 395 U. S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In *Chimel,* we were quite clearly told that a warrantless search is impermissible except as it may be reasonably necessary to protect the safety of the arresting officers, or to preserve evidence from possible destruction. Here, the accused was handcuffed and arrested as soon as he stepped from the airplane. It is undeniable that he then, and thereafter, had no access to his suitcase. It is undeniable that the immediate search that followed his arrest was motivated neither by the possibility that the handbag or its contents constituted a threat to the officers, nor by the possibility that evidence contained therein was in danger of destruction.

The majority attempts to analogize Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), which permitted a warrantless search of an automobile as an alternative to impoundment, when the automobile had been seized incident to a lawful arrest and there was probable cause for the search. However, the factors that influenced that decision are not present in this case.

As Mr. Justice White wrote in *Chambers,*

"The circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable; moreover, the opportunity to search is fleeting since a car is readily moveable. * * *

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances."

399 U.S. at 50–52, 90 S.Ct. at 1981.

Here, there can be no question as to that which would constitute the "greater" intrusion. The information which led the police to lay in wait for Mehciz was sufficient, as well, to justify their application for a warrant to search Mehciz' baggage, and the information was received in ample time for such a warrant to have been issued. Moreover, suitcases, which have neither wheels nor independent motive power, do not provide only that "fleeting" opportunity for a search as may exist as to automobiles. Additionally, one's need for an automobile in our mobile society, which surely is a factor in any determination that an immediate search is a "lesser" intrusion than impoundment until a warrant can be issued, does not apply with quite the same force to suitcases. Finally, to require that private baggage be impounded and a warrant obtained for its search would not likely impose an onerous burden upon investigating authorities, as might a similar rule with respect to automobiles. If Fourth Amendment questions are to be decided by analogy, then I should think it more appropriate to liken suitcases to houses, rather than to vehicles.[1]

It is, I hope, unnecessary for me to add that I hold no sympathy for Mehciz. Admittedly, my approach is conservative, but I cannot conscientiously ignore the tradition that judges of inferior courts are compelled, whether they like to do so or not, to apply the controlling principles of the Supreme Court. Our function is not to apply the law as we might like it to be, or that we might speculate that it may become, but to apply it as it is.

I would reverse.

---

1. Even automobiles, of course, are not subject to search at the whim of an arresting officer. As was noted in *Chimel*, "assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants *'where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.'* Carroll v. United States, 267 U.S. 132, 133, 45 S.Ct. 280, 69 L.Ed. 543." 395 U.S. at 764 n. 9, 89 S.Ct. at 2040. (emphasis added) This impracticality is absent here. Absent some reasonable assumption that Mehciz' plane might be hijacked to Cuba or elsewhere, the police could be assured that he, and his suitcase—and their information was sufficient to alert them to the fact that only a suitcase or other package would be large enough to hold the quantity of LSD that Mehciz was supposed to be carrying—would be found at an exact time and place, and that, in the meantime, no opportunity to "quickly move out of the locality or jurisdiction" would possibly arise. *Cf.* Corngold v. United States, 367 F.2d 1 (9th Cir. 1966).