**Louis Douglas McNEARY, Petitioner-Appellant,**

**v.**

**Walter T. STONE and People of the State of California, Respondents-Appellees.**

No. 73-1216.

United States Court of Appeals, Ninth Circuit.

July 12, 1973.

Rehearing Denied Sept. 5, 1973.

Certiorari Denied Dec. 3, 1973. See 94 S.Ct. 584.

Louis D. McNeary in pro. per.

Evelle J. Younger, Atty. Gen., Edward A. Hinz, Jr., Chief Asst. Atty. Gen., Doris H. Maier, Asst. Atty. Gen., Derald E. Granberg, Don Jacobson, Deputy Attys. Gen., San Francisco, Cal., for respondents-appellees.

Before MERRILL, WRIGHT and CHOY, Circuit Judges.

## OPINION

CHOY, Circuit Judge:

Louis McNeary was convicted of armed robbery after a jury trial in 1969 in a California state court and was sentenced to a term in state prison. After exhausting his available state remedies, Mc-Neary sought federal habeas corpus relief under 28 U.S.C. § 2254. The district court, after reviewing the state trial record, denied the petition without a hearing in August, 1972. We affirm.

Two bars were robbed in August and October 1968. The first robbery was executed by three black males armed with handguns at approximately 1:00 a. m. The bar was well-lighted and no disguises were worn. One of the robbers vaulted the bar and rifled the cash register while a second covered the door and the patrons. The third robber located a safe and attempted to force the bartender, Sasser, to open it. Sasser said he didn't know the combination and the three men fled shortly thereafter. This sequence of events consumed ten to fifteen minutes.

The particulars of the second robbery were identical. However, during the course of events, the bartender tripped two silent alarms and police converged on the area. Deputy Crouch arrived shortly after the alarm was sounded. He observed a lone vehicle proceeding toward him less than one block from the bar. Crouch made a U-turn and followed the vehicle into a service station. Crouch, who was alone, exited his patrol car and ordered McNeary, the only apparent occupant of the suspect vehicle, out of the car at gunpoint. Other officers arrived a few minutes later, peered into the suspect vehicle and observed two men hiding on the floor. The three were frisked and, after a report was received

that the robbery suspects were three black males, placed under arrest. McNeary's car was taken to the police sub-station one block away and searched without a warrant. The search disclosed the handguns used in the robbery.

Prior to the consolidated trial, Sasser, the bartender in the first robbery, was shown photographs for identification purposes on three occasions. Shortly after his bar was robbed, he picked out three persons as the robbers. After the fall robbery, Sasser picked out McNeary's picture from a group of eight photographs. One month later, Sasser was shown only the photographs of the three men arrested after the fall robbery and again picked McNeary. At trial, Sasser identified McNeary.

Since we have separate convictions for the two robberies involved, and attacks on each conviction, we shall treat McNeary's contentions separately.

*August Robbery*

■ The standard for pretrial photographic identification is set out in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968):

. . . each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Id.* at 384, 88 S.Ct. at 971.

In *Simmons*, the Court suggested two standards by which the permissibility of pretrial photographic identification should be judged: necessity for the use of photographic identification and the circumstances surrounding the identification. United States v. Baxter et al., (9th Cir. February 16, 1973).

■ The facts before us indicate that pretrial photographic identification was necessary. The first time Sasser was shown photographs was while the robbers were still at large. Courts have readily found a necessity for the use of photographic identification in such circumstances. *Simmons, supra.* The second and third showings were after McNeary and his cohorts were in custody for the commission of the second robbery and the police were attempting to connect them with the August robbery. Photographic identification was necessary not only to discover whether McNeary had been involved in the earlier robbery, but to locate additional suspects if that was required. *Baxter, supra.*

■ The factors utilized in evaluating the circumstances surrounding an identification were set out in Parker v. Swenson, 332 F.Supp. 1225 (E.D.Mo. 1971), and approved in *Baxter, supra.* The first is the length of time and the conditions under which a witness was able to observe the perpetrator during the crime. The robbery occurred in a well-lighted bar and the robbers did not attempt to disguise themselves. Sasser was personally ordered to accompany one of the robbers to the safe. The robbers were in the bar ten to fifteen minutes. The chance for misidentification was minimal.

■ Another factor is the conduct of the police tending to focus attention on a particular suspect. The first two showings to Sasser were properly conducted. Each time he was shown a number of photographs and Sasser picked out suspects. There is no evidence of suggestion by the police. The fact that Sasser picked out three other persons as the robbers of his bar at the first showing does not go to the propriety of the identification procedures, but was for the jury to evaluate in assessing Sasser's testimony. The third showing where only pictures of the three suspects were presented was improper, but that alone is not sufficient for a determination that the procedures taken *in toto* were so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. These pretrial photographic identification procedures did not violate the *Simmons* standard.

*October Robbery*

 Crouch was entitled to stop Mc-Neary's vehicle for investigatory purposes. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); Untermyer v. Hellbush, 472 F.2d 156 (9th Cir. 1973). Crouch's suspicions had been aroused by the notification that a serious crime had taken place nearby, the late hour and his sighting of McNeary's vehicle in close proximity to the robbery site. There was reasonable suspicion that criminal activity was afoot. United States v. Scheiblauer, 472 F.2d 297 (9th Cir. 1973); United States v. Fisch and Glasscock, 474 F.2d 1071 (9th Cir. 1973).

 When the additional officers arrived, found two men hiding in the suspect vehicle and received a radio message that the robbery suspects were three black males, coupled with the surrounding circumstances, probable cause for arrest arose. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). The facts present were sufficient to warrant a prudent man in believing that the arrested persons had committed an offense. United States v. Jit Sun Loo, 478 F.2d 401 (9th Cir. 1973); United States v. McDowell, 475 F.2d 1037 (9th Cir. 1973).

McNeary's vehicle was taken to the police substation nearby and subjected to a warrantless search. The question is whether the search was justified under the "automobile exception" established in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and extended in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

 In *Chambers*, the Court found that there was probable cause to search a car for guns and stolen money at the station house after the owner was safely in custody. The basic justification, originating in *Carroll*, was that a motor vehicle is readily movable. A search must be made immediately without a warrant or the car itself must be seized and held without a warrant until one is obtained. Perceiving little practical difference be-

tween the two alternatives, the Court held either course reasonable given probable cause to search. *Chambers* at 52, 90 S.Ct. 1975. The facts before us indicate that probable cause to search Mc-Neary's vehicle did exist at the moment of arrest and still obtained at the station house one block away. The warrantless search of McNeary's car did not violate his fourth amendment rights. United States v. Beasley, 476 F.2d 164 (9th Cir. 1973).

We agree with the conclusion of the district court that McNeary was not denied his right to counsel on his state court appeal. The denial of habeas corpus relief was proper.

Affirmed.