**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Edward Martin ROTHMAN,
Defendant-Appellant.**

**No. 73-1286.**

United States Court of Appeals,
Ninth Circuit.

Nov. 27, 1973.

Rehearing Denied April 19, 1974.

William M. Owens (argued), Encinitas, Cal., for defendant-appellant.

Harry D. Steward, U. S. Atty., Shelby R. Gott, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before DUNIWAY and CHOY, Circuit Judges, and RENFREW,* District Judge.

## OPINION

DUNIWAY, Circuit Judge:

Rothman appeals from his conviction for possession of marijuana with intent to distribute, 21 U.S.C. § 841(a)(1). He challenges the denial of his motion to suppress the marijuana as the fruit of an improper search.

When a motion to suppress has been denied we view the evidence in the

---

* The Honorable Charles B. Renfrew, United States District Judge, Northern District of California, sitting by designation.

light most favorable to the government. United States v. Sherman, 9 Cir., 1970, 430 F.2d 1402, 1404. On May 5, 1972, Rothman purchased an airplane ticket to Hawaii at the Western Airlines counter at San Diego airport. The ticket agent believed that he fitted the Federal Aviation Administration's profile of potential airplane hijackers. Rothman went to the boarding gate, where he passed through the magnetometer without activating it. He was then detained for questioning by a deputy United States Marshal who had been told that Rothman met the profile.

Rothman told the deputy that his name was Roberts and that he had no identification. Rothman then placed his jacket on the counter in front of the deputy, who reached into the jacket pocket thinking that the bulge in the jacket might be a weapon. Only money and keys were found. Rothman produced identification from his wallet showing him to be Rothman. The deputy told Rothman that a further identification check would have to be run in the office before he would be permitted to fly.

While the deputy was unlocking the door to his office, Rothman grabbed the deputy's right hand and jerked him approximately two to three feet. He was immediately arrested for assaulting a federal officer and his hands were handcuffed behind his back. He was given a *Miranda* warning.

Rothman's checked luggage was removed from the plane and brought to the office in which he was being held by the deputy. The deputy asked Rothman if he could search the luggage. Rothman refused permission to search. The deputy called the Federal Bureau of Investigation asking that agents be sent over to investigate the assault charge. A forty-five minute conversation ensued between Rothman and the deputy in which the only reference to the case was that Rothman asked the possible punishment for assaulting a federal officer and the deputy told him three to five years. The F.B.I. arrived, interrogated Roth-

man at length and then went into an adjoining room. At some point during the time that Rothman was in the office the handcuffs were removed and he was handcuffed again with his hands in front of him.

The following conversation then occurred:

Rothman: "Why don't you go ahead and open the bags?"

Deputy: "No, if you refuse to open them I don't want to open them now." [Something was then said about a search warrant.] "We can get one and probably will later on."

Rothman: "What is the use of going through all this, go ahead and open the bags, it is okay."

Deputy: "No, I don't want to open them now. I won't do it. Why don't you open it now? The keys are laying here on the desk, if you want to open it go ahead."

Rothman took the keys which had been placed in front of him and opened his luggage which contained thirty-nine kilos of marijuana.

■ Under the Fourth Amendment, warrantless searches, with a few specifically established exceptions, are "per se" unreasonable. Schneckloth v. Bustamonte, 1973, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854; Katz v. United States, 1967, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. The government argues that Rothman voluntarily consented to the search, that the search was justified as incident to a lawful arrest, and that the search was a valid administrative search and thus that the motion to suppress was properly denied.

### 1. *Consent*

■ Voluntary consent to a search is a recognized exception to the Fourth Amendment warrant requirement. Schneckloth v. Bustamonte, *supra*, 412 U.S. at 219, 93 S.Ct. 2041. Davis v. United States, 1946, 328 U.S. 582, 593–594, 66 S.Ct. 1256, 90 L.Ed. 1453; Zap v. United States, 1946, 328 U.S. 624,

630, 66 S.Ct. 1277, 90 L.Ed. 1477. The test for consent is voluntariness and "voluntariness is a question of fact to be determined from all the circumstances" of a particular case. Schneckloth v. Bustamonte, *supra*, 412 U.S. at 248–249, 93 S.Ct. at 2059.

■■ The government bears the initial burden of proving consent. United States v. Davis, 9 Cir., 1973, 482 F.2d 893, slip op. at 31. On appeal we examine the trial court's finding of fact (such as the fact of consent) under the "clearly erroneous" rule. United States v. Page, 9 Cir., 1962, (in banc) 302 F.2d 81, 85.

The trial court's finding of voluntary consent was based primarily upon Rothman's original refusal to permit the search. The trial court reasoned that because Rothman was aware of his option to refuse, his eventual consent was voluntary.

■ *Bustamonte* held that "knowledge of a right to refuse is a factor to be taken into account, [but] the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing voluntary consent." Schneckloth v. Bustamonte, *supra*, 412 U.S. at 249, 93 S.Ct. at 2059.[1] *Bustamonte* cuts two ways. The knowledge of the right to refuse consent is no longer a necessary condition for valid consent, but neither is it necessarily a sufficient condition. It is only an element to be considered as part of the "totality of circumstances." What is required is a "careful sifting of the unique facts and circumstances of each case." Schneckloth v. Bustamonte, *supra*, 412 U.S. at 233, 93 S.Ct. at 2050.

■ "Two competing concerns must be accommodated in determining the meaning of a 'voluntary' consent—the

legitimate need for such searches and the equally important requirement of assuring the absence of coercion." *Id.* at 227, 93 S.Ct. at 2048. Warrantless consent searches are permissible because they enable the police to investigate in situations where the "stigma and embarrassment" of arrest or a "far more extensive search pursuant to a warrant" may be avoided. *Id.*, at 228, 93 S.Ct. at 2048. "Consent searches are part of the standard investigatory techniques of law enforcement agencies. They normally occur on the highway or in a person's home or office, and under informal and unstructured conditions." *Id.* at 231–232, 93 S.Ct. at 2050. The consent search as a tool of police investigation is viewed by the Court as a supplementary aid to routine informal investigatory work which "normally occur in a person's own familiar territory." *Id.* at 247, 93 S.Ct. at 2058.

■ In the present case the "competing concern" of the policy is less significant than under normal consent search conditions. Here, Rothman was arrested and handcuffed and had been in incommunicado custody for some time when he opened the bags. He was by no means in an informal atmosphere or on familiar grounds. Rather, he was arrested, handcuffed, isolated in a strange place, given a formal *Miranda* warning and then interrogated by three officers over a period of approximately two hours. Such an environment is akin to "the specter of incommunicado police interrogation in some remote station house" and is squarely "inapposite" to the questioning environment contemplated when consent searches were held permissible. *Id.* at 247, 93 S.Ct. 2041. In a situation such as this the government's burden to prove voluntary con-

1. Bustamonte is limited by its facts to cases in which the consenting party is not in custody. Schneckloth v. Bustamonte, *supra*, 412 U.S. at 248, 93 S.Ct. 2041. However, we have never applied a different test for consent searches on the basis of the preconsent arrest of the consenting party. Cipres v. United States, *infra*, 343 F.2d 95;

United States v. Page, *supra*, 302 F.2d 81. Arrest is but one factor, albeit a critical one, in determining whether or not the consent was voluntary. This approach is compatible with the Supreme Court's "totality of circumstances" test and applies that test to all consent search situations.

sent is increased. United States v. Page, *supra,* 303 F.2d 81, 84; Judd v. United States, 1951, 89 U.S.App.D.C. 64, 190 F.2d 649, 651.

"It has been long established that one can validly consent to a search, even though the consent be given while defendant is in custody." United ·States v. Page, *supra,* 302 F.2d 81, 83. The fact that the defendant originally refused to consent may be evidence that he knowingly and voluntarily consented to the search, absent facts to the contrary. Davis v. United States, *supra,* ·328 U.S. 582, 592, 66 S.Ct. 1256, 90 L. Ed. 1453. However, a mere expression of acquiescence may not be enough to sustain a finding of voluntary consent. Bumper v. North Carolina, 1968, 391 U. S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; Johnson v. United States, 1948, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; Amos v. United States, 1921, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654; Cipres v. United States, 9 Cir., 1965, 343 U.S. 95, 97. Where the consent is obtained through a misrepresentation by the government, Bumper v. North Carolina, *supra,* 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed. 2d 797, or under inherently coercive pressure and the color of the badge, Johnson v. United States, *supra,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436; United States v. Marshall, 9 Cir., 1973, 488 F.2d 1169, 1188–1189, such consent is not voluntary.

The psychological atmosphere in which the consent is obtained is a critical factor in the determination of voluntariness. Channel v. United States, 9 Cir., 1960, 285 F.2d 217, 220; Judd v. United States, *supra,* 190 F.2d 649, 651. In looking at the factual issue of voluntariness, the court must be aware of the "vulnerable subjective state" of the defendant as well as the possibility of "subtly coercive police questions." Schneckloth v. Bustamonte, *supra,* 412 U.S. at 229, 93 S.Ct. at 2049, and the inherently coercive nature of custodial interrogation, *Id.* at 247, 93 S. Ct. 2041.

This case is another instance of a custodial investigation in which, "viewing the totality of the circumstances," we are compelled to hold that the consent was not voluntary because it was systematically psychologically coerced.

Moreover, this is not a case in which a consent search was necessary or proper. If probable cause for a search was available, the officers had ample time to get a warrant. Johnson v. United States, *supra,* 333 U.S. 10, 15, 68 S. Ct. 367, 92 L.Ed. 436.· There was no risk that evidence would be lost or destroyed or that Rothman would flee. In short, there was no justification for the coercive official tactics which produced this consent. The trial judge's finding of consent is clearly erroneous.

## 2. *Search Incident to Arrest*

The trial court found that the deputy had probable cause to arrest Rothman for assault. We agree. A warrantless search incident to a lawful arrest is, under certain conditions, an exception to the Fourth Amendment's warrant requirement. Chimel v. California, 1969, 395 U.S. 752, 755, 89 S.Ct. 2034, 23 L.Ed.2d 685. The government argues that the search of Rothman's luggage was a valid search incident to the indisputably valid arrest.

In *Chimel* the Supreme Court held that a search incident to an arrest must not go beyond "the area from within which [the defendant] might have obtained either a weapon or something that could be used as evidence against him." *Id.* at 768, 89 S.Ct. at 2043. Warrantless searches incident to arrests are thus justified only to the extent that they are necessary to prevent the destruction of evidence or to protect the arresting officer. Coolidge v. New Hampshire, 1971, 403 U.S. 443, 457 n. 11, 91 S.Ct. 2022, 29 L.Ed.2d 564; Chimel v. California, *supra,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685.

The government points to United States v. Mehciz, 9 Cir., 1971, 437 F.2d 145, cert. denied, 402 U.S. 974, 91 S.Ct.

1663, 29 L.Ed.2d 139 to support its position that the search was valid as incident to the arrest. *Mehciz* and its progeny [2] are easily distinguishable. In those cases the suitcases searched were in the defendants' possession at the time of the arrests. United States v. Mehciz, *supra*, 437 F.2d 145, 146; United States v. Maynard, 9 Cir., 1971, 439 F.2d 1086. In those cases the arresting officers had probable cause to make the searches apart from the arrests. In those cases the criminal activity for which the defendants were arrested related to the contraband found in the briefcases; the contraband provided additional evidence to convict the defendants on the charges for which they were arrested.

 Rothman did not have his luggage with him when he was arrested; it had been checked with the airline. Rothman was immobilized, so that the search can not be justified on the grounds of protecting the officer or preserving evidence. The search occurred sometime after the arrest. The object searched had to be brought to the defendant from outside of the arrest area. It is doubtful, therefore, that this search would even have satisfied the old *Rabinowitz* contemporaneous search standard. Coolidge v. New Hampshire, *supra*, 403 U.S. 443, 456–457, 91 S.Ct. 2022, 29 L.Ed.2d 564. Here there was no connection at all between the arrest and the search. The officers had no reason to believe that the search would produce anything to support the assault charge. The assault did not provide probable cause to search the luggage. The officer merely wished to open the bags as what he called "standard procedure."

 Such a general search can not be justified merely on the basis of a legal arrest. The police can not circumvent the Fourth Amendment's warrant requirement by arresting a person and then bringing that person into contact with his possessions which are otherwise unrelated to the arrest. As the Supreme Court reiterated in *Chimel*, such general

searches are forbidden. Chimel v. California, *supra*, 395 U.S. 752, 767–768, 89 S.Ct. 2034, 23 L.Ed.2d 685.

### 3. *Administrative Search*

The government argues that pursuant to regulations issued under the Federal Aviation Act of 1958, 49 U.S.C. § 1354(a), 1421, 1424, the warrantless search is permissible as an administrative search.

 Appellant's bag was not searched as a part of an administrative screening program of searching airline passenger's carry-on luggage such as was approved in United States v. Davis, *supra*, 482 F.2d 893; United States, v. Moore, 9 Cir., 1973, 483 F.2d 1361, at 1363. When the search occurred, appellant was already under arrest and there was no possibility that he might take a flight that day. The search, therefore, was unrelated to the airport screening program which was designed to catch potential hijackers, and not to provide a general permission to search unrelated to possible hijacking. "To meet the test of reasonableness, and administrative screening search must be as limited in its intrusiveness as is consistent with satisfaction of the administrative need that justifies it." United States v. Davis, *supra*, 482 F.2d 893, at 910. This case falls within our warning in *Davis*:

> "There is an obvious danger, nonetheless, that the screening of passengers and their carry-on luggage for weapons and explosives will be subverted into a general search for evidence of crime. If this occurs, the courts will exclude the evidence obtained." (At 909, footnotes omitted.)

The government does not argue that any other exception to the Fourth Amendment warrant requirement applies here. The warrantless search of Rothman's luggage was improper. We need not reach appellant's other claims of error.

The judgment is reversed and the case is remanded with directions to grant

---

2. United States v. Maynard, 9 Cir., 1971, 439 F.2d 1086.

Rothman's motion to suppress and for such further proceedings as may be appropriate.

RENFREW, District Judge (dissenting):

While starting from the same basic premises as the majority, I am unable to join its conclusion that appellant did not voluntarily consent to the search of his baggage. Voluntariness is a question to be determined by consideration of all the circumstances of each specific case. The government bears the initial burden of proof, but once a motion to suppress has been denied, an appellate court must view the evidence in a light most favorable to the government. The "clearly erroneous" rule does apply upon review of the trial court's findings of fact.

The majority holds that the court below clearly erred in finding voluntary consent and that instead it is "compelled to hold that the consent was not voluntary because it was systematically psychologically coerced" Majority opinion, *supra*, p. 1265. Nowhere in its opinion, however, does the majority state what standard of persuasion should have been applied by the trial court. Generally, consent to a search without a warrant must be shown by "clear and positive" evidence. Sherrick v. Eyman, 389 F.2d 648, 651 (9 Cir. 1968), cert. denied, 393 U.S. 874, 89 S.Ct. 167, 21 L.Ed.2d 144 (1968); State of Montana v. Tomich, 332 F.2d 987, 989 (9 Cir. 1964). That vague standard may mean a preponderance of the evidence or evidence establishing consent beyond a reasonable doubt.[1]

A brief review of the evidence casts great doubt on the possibility that the majority accepts the preponderance test. Evidence tending to support involuntariness includes the holding of appellant in incommunicado custody for approximately two hours, the deputy's response to appellant's inquiry about the possible punishment for assaulting a federal officer, the interrogation of him by the F.B.I. agents, handcuffing appellant, the deputy's remark that a search warrant could and probably would be obtained, and the deputy's final suggestion that, if appellant wanted the bags opened, then he should open them himself. Evidence tending to support a finding of voluntariness includes the *Miranda*[2] warning, appellant's initial refusal to permit a search, his testimony that he knew that he had a right to refuse, his suggestions that the deputy open the bags, and the deputy's response that he would not open them as long as appellant refused to open them.

With this evidence on both sides of the question, the decision below undoubtedly was based on the trial court's assessment of the psychological susceptibility of appellant to subtle coercion or suggestion. The majority criticizes the trial court's reliance on appellant's initial refusal to permit a search, but that factor bears significantly on the question of appellant's psychology. This question, involving to a great extent an analysis by the trier of fact of the demeanor of the witness, is best left to the trier of fact. Indeed, the "clearly erroneous" rule is based upon that principle. See United States v. Page, 302 F.2d 81, 84 (9 Cir. 1962). If the preponderance of the evidence rule is the appropriate standard of proof in this case, then reversal is completely unwarranted. The

---

1. A decision much relied upon by the majority, Schneckloth v. Bustamonte, 412 U.S. 218, 223–227, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), refers to cases involving the question of voluntariness of a confession to aid in determining the relevant considerations for deciding the voluntariness of consent to a search. The issue of the appropriate standard of persuasion in that area is whether the preponderance or reasonable doubt standard should be used. See Lego v. Twomey, 404 U.S. 477, 478–479, 479, n. 1, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). It is now settled in this Circuit at least that the preponderance test applies in judging the voluntariness of a confession in a federal case. United States v. Cluchette, 465 F.2d 749, 754 (9 Cir. 1972).

2. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

combination of taking the facts in a light most favorable to the government, i.e., stressing the facts supporting voluntariness, and applying the clearly erroneous rule is too great a barrier to overcome for reversal.

This conclusion leads me to believe that either the reasonable doubt standard has been adopted by the majority or its holding is one of law and not of facts. If the former, the use of a reasonable doubt standard is itself an important question which the Court should consider in depth before adopting. Here it is adopted by implication—if it has been adopted—and an anomaly has been created. The Constitution does not require the use of the reasonable doubt standard in determining the voluntariness of confessions. Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). This Circuit, based upon Lego v. Twomey, has adopted the preponderance standard for judging the voluntariness of a confession in federal cases. United States v. Cluchette, 465 F.2d 749, 754 (9 Cir. 1972).[3] This view should apply *a fortiori*, one would think, to searches.

But even if the reasonable doubt standard is appropriate here, I am not convinced that the lower court's ruling is clearly erroneous. The reasonable doubt would have to arise from consideration of appellant's psychology, a factor which does not leap forth from the printed page of the record.[4]

The unpersuasiveness of the majority's assessment of the facts supports an inference that the majority is actually deciding on the basis of a new principle of law.[5] That principle appears to be: No person can voluntarily consent to a search while in custody if the authorities have a reasonable opportunity to obtain a search warrant. Perhaps the majority would allow that in some instances consent to a warrantless search could be legally voluntary, but its ruling in this case, with its undramatic facts, indicates that instances of voluntariness would be rare exceptions, thus creating the anomalous situation in which a defendant in custody could confess to the commission of a crime but not consent to the search of his belongings.[6] By making this question one of law, the majority opinion would, of course, conflict with Schneckloth v. Bustamonte, 412 U. S. 218, 224, 227, 93 S.Ct. 2041, 36 L.Ed. 2d 854 (1973), which admonishes against the use of mechanical rules in determining voluntariness.

3. The holding of Lego v. Twomey is that state courts are not constitutionally required to use the reasonable doubt test, but in a footnote the Supreme Court expressed a broader view: "It is no more persuasive to impose the stricter standard of proof as an exercise of supervisory power than as a constitutional rule." 404 U.S. at 488, n. 16, 92 S.Ct. at 626.

4. "We sometimes tend to forget that the testimony of a witness, presented to us in a cold record, may make an impression upon us directly contrary to that which we would have received had we seen and heard that witness. It ought not to be assumed that United States District Judges are any less determined to preserve constitutional rights than we are." United States v. Page, 302 F.2d 81, 84 (9 Cir. 1962).

5. The following key language of the majority opinion strongly suggests a legal principle: "Moreover, this is not a case in which a consent search was necessary or proper. If

probable cause for a search was available, the officers had ample time to get a warrant. * * * [citation omitted] There was no risk that evidence would be lost or destroyed or that Rothman would flee. In short, there was no justification for the coercive official tactics which produced this consent." Majority opinion, supra, p. 1265.

6. The majority quotes often from Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). That case, however, does not support the majority's decision in that the Supreme Court approached the facts with a much greater willingness to find voluntary consent. Though the respondent in *Bustamonte* was not in custody, there was no evidence that he knew that he could refuse to allow a search. The majority here, in contrast, seems to begin with a presumption of involuntariness. Perhaps, as the majority says, *Bustamonte* cuts both ways, but it does not justify the majority's swath.

I share the majority's concern that authorities not be permitted to use subtly coercive tactics within the always oppressive psychological atmosphere of police custody to obtain consent for a search. I differ with the majority on the judicial means for deterring such tactics and preserving individual rights. The only trustworthy device is the finding of facts by a trial judge. The majority, either by, in effect, substituting an appellate court as the main fact-finder, or by announcing a new prophylactic rule of law, has failed to consider all aspects of the consent issue. It ignores other social interests in allowing the use of evidence discovered by a search to which an accused in fact consented voluntarily, as shown by a preponderance of the evidence: the interest in using the best evidence of guilt or innocence and the interest in viewing individuals as free agents capable of knowingly and voluntarily waiving their constitutional rights.

For these reasons, I respectfully dissent.