**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Glenn Noland RICHARDS, Defendant-
Appellant.**

**No. 73–2313.**

United States Court of Appeals,
Ninth Circuit.

June 13, 1974.

Frank T. Vecchione, Deputy Federal Defender (argued), Robert W. Ripley, Jr., Federal Defenders, Inc., San Diego, Cal., for defendant-appellant.

David P. Curnow, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., Shelby R. Gott, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before BARNES, HUFSTEDLER and CHOY, Circuit Judges.

## OPINION

CHOY, Circuit Judge:

Glenn Noland Richards appeals from a conviction for possession of approximately 484 grams of marijuana. 21 U.S.C. § 844 (1970). He contends that his seizure from an airplane and a later search of a package aboard the plane violated his rights under the Fourth Amendment. We affirm.

### The Evidence

 Viewing the evidence presented at the suppression hearing in the light most favorable to appellees, United States v. Hood, 493 F.2d 677 (9th Cir. 1974), in mid-December 1972 appellant landed at San Diego's Montgomery Field in a privately-owned twin-engine aircraft. He rented an automobile from an auto rental agency at the airport, but failed to pay the bill. Officers investigating the incident discovered a large, tan-colored plastic bag taken from the rented auto, which they recognized as a "body pack" used to transport narcotics from the shape into which it was rolled and taped. Further search of the vehicle revealed a receipt from a border parking lot from which persons could walk into Mexico. The officers also learned that the airplane had been sold in October, 1972 to a Marion Roland, who was suspected of involvement in the trafficking of narcotics and stolen guns between the United States and Mexico.

About a month later in mid-January 1973, appellant again landed at Montgomery Field and rented an automobile. Agents of the Bureau of Narcotics and Dangerous Drugs (BNDD) and local police officers placed the aircraft under surveillance.

On January 18, 1973, an officer and three agents saw appellant and one Lester Akins pull up to the airplane in an automobile, and casually begin unloading some luggage, a suit carrier and a rifle scabbard from the auto and into the plane. Before handing Richards the final item, a small package in Christmas wrapping, however, Akins made a 360 degree scan of the airfield as if to see whether he was being watched. Richards took the package from Akins, stepped toward the plane, and then he too looked completely about the area. The auto was driven behind an airport building and the two men walked back to the airplane, entered, and quickly started the engine.

Agents John Collins and Philip Needham of BNDD and police officer Clif-

ford Collins "approached" the aircraft which was ready for takeoff. Standing near the left wing of the plane, Needham raised his badge, identified himself, and shouting over the noise of the speeding engine, ordered appellant, who was in the pilot's seat, to shut off the engine and get down. Richards looked from side to side and appeared hesitant about what to do. Agent Collins at that moment moved in front of the aircraft, drew his gun, pointed it at Richards, and again yelled to him to shut off the engine and get out of the plane. The two men disembarked. Collins identified himself and said he wanted to speak to them because they were suspected of narcotics smuggling. He then patted down Richards in search of weapons, and finding none, replaced the gun inside his waistband.

The officers began to question the men on the airfield, but because wind conditions made communication difficult, the group went inside the airport terminal building. Neither Richards nor Akins objected to moving inside.

In response to questions, Richards told Agent Collins that he was a pilot for Akins, an executive of the Viking Steel Company and the Pool Supply Company of Fresno. He said that he was not paid for this work, however. Richards also said that he had flown from Fresno to San Diego at Akins' request, but had last departed from somewhere in Texas. When Collins noted that this was a roundabout way of flying from Fresno to San Diego, appellant responded that "he was on vacation." Finally, Richards did not reply to Collins' inquiry about having an unopened Christmas package some three weeks after that holiday.

At first Akins claimed he was a regional sales representative for the steel

and pool supply companies. Collins asked if he could verify this information so the officers could conclude the investigation. Akins told him to call the companies' office and speak to a Red Orndoff, who owned the companies. But a check revealed that the business address given by Akins was incorrect and there was no answer when Collins phoned shortly before noon the telephone number which was listed for Viking Pool Supply. Akins then admitted that he had no relationship to the corporations, claiming instead to be an unemployed laborer. He then gave Collins the number of a Red Roland,[1] whose name he claimed to have confused with that of a Paul Orndoff. Collins learned that this telephone number was disconnected.

Because of his inability to confirm who owned the airplane, which he feared might be stolen, Collins asked for assistance from the Federal Aviation Administration in determining the airplane's owner. When an FAA inspector arrived, Richards returned to the aircraft to retrieve some documents, and the inspector called a central office in Oklahoma City. The information he received showed that the plane was last registered in 1970 to the San Benito Air Service.[2]

During the time that appellant was being questioned, Collins told him that the officers, believing narcotics were aboard, wished to search the aircraft. He also advised appellant, however, that he did not have to permit such a search. Richards said he could not give permission to search since it was not his aircraft. Collins then asked about searching the personal belongings placed aboard the aircraft, to which Richards responded, "Yes, I have nothing to hide."

1. Agent Collins did not at this time connect the name of Red Roland with that of the Marion Roland who was under BNDD investigation.

2. The inspector also determined that Richards' pilot license was restricted to single engine aircraft, that his medical certificate for flying was expired, and that airport

rental and docking fees were owed for the airplane. Although inquiries into these areas and the ownership of the airplane may not have been within the domain of the BNDD agents, police officer Collins, who was on the scene, had jurisdiction over stolen aircraft. *See* Cal.Penal Code § 499d (West 1970).

When Collins mentioned to the other officers that consent had been granted to search the airplane, Richards interrupted saying that he had not granted such permission. But when Collins again agreed to the search of only the personal effects loaded on the plane, and not the plane itself, appellant again assented.

In order to ascertain quickly whether there were any narcotics, Collins requested a U.S..Customs narcotics detector dog. As the trainer brought the dog near the Christmas package lying on a seat inside the airplane next to the door, the dog "alerted" and had to be led away to prevent it from tearing the package apart. The package was opened and found to contain marijuana. Then, about an hour after he was first detained, appellant was formally arrested, handcuffed and given the standard *Miranda* warning, after which a smaller quantity of marijuana and some cocaine were discovered in his pocket. A search of the airplane disclosed evidence indicating that it had been used for transporting narcotics on trips from Mexico.

### The Stop and Detention

■ Appellant contends that the gunpoint stop and detention constituted an arrest for which the officers lacked probable cause, thereby rendering the arrest illegal and requiring that any evidence stemming therefrom be suppressed. At the suppression hearing the district court specifically rejected the contention that appellant was under arrest when ordered out of the airplane and questioned by the officers. Precisely when in each case an arrest has occurred is a question of fact which depends on an evaluation of all the surrounding circumstances. Peters v. New York, 392 U.S. 40, 67, 88 S.Ct. 1889, 1912, 20 L.Ed.2d 917 (1968); Rios v. United States, 364 U.S. 253, 261–262, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960). The record on appeal supports the district court's conclusion. Accordingly, we hold that appellant was not arrested, but · merely stopped and detained, until after the discovery of the contraband.

■ It seems clear that an investigatory stop was justified at its inception. The specific facts known to the officers about appellant's landings at an airport close to the border in an airplane believed to be owned by a narcotics dealer, the prior discovery of the body pack and parking lot receipt in the rented automobile, and the furtive handling of the package followed by the attempt to hastily depart, together with the rational inferences which the officers could draw from these facts, certainly were sufficient to create a "founded suspicion" on their part that "criminal activity might be afoot." A stop for the purpose of further investigation was, therefore, warranted. United States v. Fisch, 474 F.2d 1071, 1075–1076 (9th Cir.), cert. denied, 412 U.S. 921, 93 S.Ct. 2742, 37 L.Ed.2d 148 (1973); United States v. Leal, 460 F.2d 385, 387–388 (9th Cir. 1972); United States v. Brown, 436 F.2d 702, 705 (9th Cir. 1970).

■ We think the officers acted appropriately in accomplishing the stop. After approaching the aircraft, Agent Needham displayed his badge and ordered appellant to shut down the plane's engines and disembark. This order was accompanied by no greater use of force than is involved in any request by a peace officer to stop and answer some questions. (Compare United States v. Strickler, 490 F.2d 378 (9th Cir. 1974) and Taylor v. Arizona, 471 F.2d 848 (9th Cir. 1972)). Agent Collins drew his gun and repeated the command only after appellant failed to comply with the first order. Otherwise, with nothing impeding the airplane, which was ready for takeoff, the officers would have been powerless to prevent its flight. Moreover, the officers had reason to believe that appellant or Akins was armed since they had seen the rifle scabbard loaded aboard the plane; so when there was no compliance with the initial order, appropriate measures to protect themselves were justified. *Cf.* Adams v. Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In light of these exigencies, some show of

force to stop appellant was both necessary and reasonable. *See* McNeary v. Stone, 482 F.2d 804 (9th Cir.), cert. denied, 414 U.S. 1071, 94 S.Ct. 584, 38 L. Ed.2d 478 (1973); United States v. Unverzagt, 424 F.2d 396 (8th Cir. 1970); Wartson v. United States, 400 F.2d 25 (9th Cir. 1968), cert. denied, 396 U.S. 892, 90 S.Ct. 184, 24 L.Ed.2d 166 (1969).[3]

When appellant was on the ground, Agent Collins identified himself, told appellant the officers wanted to ask him some questions, and checked him for weapons, after which Collins holstered his gun. No formal words of arrest were used. While an arrest can be made without the use of such words, in the circumstances of this case, the absence of such words as well as the officer's actions indicate that appellant was merely detained for investigative questioning and not placed under arrest. *Accord,* United States v. Scheiblauer, 472 F.2d 297 (9th Cir. 1973); United States v. Thomas, 396 F.2d 310 (2d Cir. 1968).

In appropriate instances this court has consistently permitted "the brief detention of citizens under circumstances not justifying an arrest, for purposes of limited inquiry in the course of routine police investigations." Wilson v. Porter, 361 F.2d 412, 415 (9th Cir. 1966); *see, e. g.,* United States v. Walling, 486 F.2d 229 (9th Cir. 1973); Gaines v. Craven, 448 F.2d 1236 (9th Cir. 1971); Gilbert v. United States, 366 F.2d 923 (9th Cir. 1966). The test for determining the lawfulness of such police detentions is whether, under the totality of the circumstances, they are reasonable. One of the factors in the assessment of their reasonableness is the extent of the detention. Arnold v. United States, 382 F.2d 4, 7 (9th Cir. 1967); *see* United States v. Walling, *supra,* 486 F.2d at 235. Although appellant's eventual detention for over an hour cannot

be considered a "brief" or "momentary" stop, in the particular circumstances of this case we believe that this extended detention was reasonable.

The officers' inquiries of appellant and Akins focused primarily on appellant's relationship to the aircraft. In light of the suspected use of the airplane and appellant's suspicious behavior both on his prior visit to San Diego and in loading the airplane, these inquiries were *within the scope of a routine on-the-scene police investigation.* Appellant's implausible and evasive responses to these questions indicated that something was awry and created even more reason for the investigation being pursued further. United States v. West, 460 F.2d 374, 375 (5th Cir. 1972); *see* Lowe v. United States, 407 F.2d 1391, 1394 (9th Cir. 1969); *cf.* United States v. Jennings, 468 F.2d 111, 115 (9th Cir. 1972). This involved not only tracking down Akins' (whom appellant linked to the airplane) misleading stories, but when these proved false also checking with the FAA to be sure the plane was not stolen. Obviously this took time. Thus, where the suspects' own unsatisfactory responses to legitimate police inquiries were the principal cause of the extended detainment, the delay of slightly over an hour was not unreasonable. *See* United States v. Jackson, 448 F.2d 963, 968–969 (9th Cir. 1971), cert. denied, 405 U.S. 924, 92 S.Ct. 970, 30 L. Ed.2d 796 (1972); *see also* Gray v. United States, 394 F.2d 96, 99–100 (9th Cir.), cert. denied, 393 U.S. 985, 89 S.Ct. 459, 21 L.Ed.2d 446 (1968).

*The Consent to Search*

In his findings at the conclusion of the suppression hearing the district court judge found that there was a valid consent to the search of the package. The question of whether there was voluntary consent is one of fact to

---

3. In assessing the police officer's actions when detaining a suspect, "the sounder course is . . . to make the scope of the particular intrusion, *in light of all the exi-* gencies of the case, a central element in the analysis of reasonableness." Terry v. Ohio, 392 U.S. 1, 18 n. 15, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968) (emphasis added).

be determined from the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 248, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); United States v. Heimforth, 493 F.2d 970 (9th Cir. 1974). Here, appellant and Akins were seated comfortably in the airport terminal building when Agent Collins informed appellant of his Fourth Amendment right to withhold his consent and then asked if he would permit a search of the airplane. Although appellant refused to allow such a search because he did not own the plane, he did consent to a search of his personal belongings placed aboard. This situation is unlike that in United States v. Rothman, 492 F.2d 1260 (9th Cir. 1973), where consent was obtained from a lone suspect who was handcuffed, placed in an office of a United States Marshall with three deputies present and interrogated for over two hours. The atmosphere here was not one in which consent was psychologically coerced because of appellant's "vulnerable subjective state" through the use of "subtly coercive police questions." *Id.* at 1265. While it is often difficult to draw the line between such coercive police tactics and otherwise sound police interrogation, in this case Officer Collins' inquiry about searching the personal effects after appellant's stated reason for not permitting a search of the airplane falls within the latter category.

▆▆▆ Since there was valid consent for a search, the use of the detector dog was permissible. When the dog "alerted," there was sufficient probable cause to open the package and thereafter to arrest appellant.

Finding no violation of appellant's rights, the judgment is affirmed.

HUFSTEDLER, Circuit Judge (dissenting):

The undisputed facts are that three law enforcement officers approached Richards' aircraft as it was preparing to take off. Agent Needham, standing near one wing, displayed his badge and, over substantial engine noise, ordered Richards to cut the motor and to disembark. As Richards hesitated momentarily, Agent Collins moved to the front of the aircraft, drew his gun, pointed it at Richards, and ordered him to shut off the engine and get out of the plane.

The majority opinion holds that this police conduct did not constitute an arrest, but merely a brief investigatory detention. I cannot equate Richards' obedience to police commands made at gunpoint with the brief investigatory stop authorized by Adams v. Williams (1972) 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612. An identical argument was rejected in United States v. Strickler (9th Cir. 1974) 490 F.2d 378, which held that an arrest occurred when police surrounded a parked vehicle and one of the officers, after drawing his gun, ordered the driver out of the automobile.

The majority opinion implies that the determination that Richards was not arrested when ordered at gunpoint from the plane is a question of fact, resolved against Richards by the district court, as to which this court must pay the usual deference accorded to a district court's factual findings supported by the record. Such deference to the district court's conclusion is improper. The facts concerning the officers' armed approach to the aircraft and their orders for Richards to deplane were undisputed. The question whether, based on those facts, an arrest or merely an investigatory detention occurred is one of law, controlled by our prior decision in United States v. Strickler, *supra*. (*See also* Plazola v. United States (9th Cir. 1961) 291 F.2d 56, 60, *disapproved on the standing issue only*, Diaz-Rosendo v. United States (9th Cir. 1966) 357 F.2d 124, cert. denied, 385 U.S. 856, 87 S.Ct. 104, 17 L.Ed.2d 83.)

As the majority opinion implicitly recognizes, the officers had no warrant and no probable cause to arrest Richards when he was ordered from his plane. The arrest was therefore illegal. All of the evidence that was developed thereafter was the product of the illegal arrest

and should have been suppressed. (Wong Sun v. United States (1963) 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441.)

Under United States v. Strickler, *supra*, reversal is compelled.